DEPARTMENT OF LABOR AND ECONOMIC GROWTH,
UNEMPLOYMENT INSURANCE AGENCY v DYKSTRA
DEPARTMENT OF LABOR AND ECONOMIC GROWTH,
UNEMPLOYMENT INSURANCE AGENCY v JORDAN

Docket Nos. 280591 and 280592. Submitted January 7, 2009, at Grand
Rapids. Decided April 7, 2009, at 9:00 a.m.

Tracey Dykstra applied for federal trade readjustment allowance
(TRA) benefits, which are intended to supplement state unem-
ployment benefits for workers who have lost their jobs as a
result of competition from imports. Eligibility for the benefits
requires the worker to enroll in an approved training program,
have completed an approved training program, or have obtained
a waiver of the training requirement. Dykstra filed a request for
a waiver, but did so after the deadlines found in 19 USC
2291(a)(5)(A)(ii). The Unemployment Insurance Agency of the
Department of Labor and Economic Growth (now the Depart-
ment of Energy, Labor, and Economic Growth) denied her
request. She appealed, and a hearing referee reversed the
agency's decision after finding that Michigan Works! had failed
to comply with its statutory duty to notify Dykstra of the need
to submit the form required for a waiver. The agency appealed,
and the Employment Security Board of Review affirmed the
hearing referee's decision. The agency appealed in the Kent
Circuit Court, Dennis C. Kolenda, J., which affirmed. The
agency applied for leave to appeal, which the Court of Appeals
denied in an unpublished order, entered October 16, 2006
(Docket No. 271535). In lieu of granting leave to appeal, the
Supreme Court remanded the case to the Court of Appeals for
consideration as on leave granted. 480 Mich 869 (2007).

Robert D. Jordan applied for TRA benefits and requested a waiver
of the training requirement. He obtained the waiver, but the
agency denied him benefits on the ground that he obtained the
waiver after the deadlines imposed by 19 USC 2291(a)(5)(A)(ii).
A hearing referee affirmed the agency's denial, but the board of
review reversed, concluding that the deadlines did not apply to
waivers. The agency appealed in the Kent Circuit Court, Donald
A. Johnston, J., which affirmed. The agency applied for leave to

appeal, which the Court of Appeals denied in an unpublished order, entered December 12, 2006 (Docket No. 272634). In lieu of granting leave to appeal, the Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted. 480 Mich 869 (2007). The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. The United States Department of Labor determined that the deadlines found in 19 USC 2291(a)(5)(A) apply to the waiver of the training requirement permitted under 19 USC 2291(a)(5)(C) and (c). Under this interpretation, neither Dykstra nor Jordan met the eligibility requirements for TRA benefits because they missed the deadlines. A court must defer to a federal agency's interpretation of a statute if Congress directly addressed the precise question at issue. If Congress did not directly address the issue, that is, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's interpretation is based on a permissible construction of the statute. Congress's intent must be given effect, and a court must reject administrative constructions that are contrary to clear congressional intent.

2. A plain reading of the statutory scheme as a whole indicates that Congress clearly provided that the deadlines stated in 19 USC 2291(a)(5)(A)(ii) apply only to enrollments in approved training programs under 19 USC 2291(a)(5)(A)(i). Congress clearly intended the waivers permitted by 19 USC 2291(a)(5)(C) and (c) to be subject only to the timing restrictions generally applicable to the provision of TRA benefits. Given this clear intent, the Department of Labor's determination that the deadlines apply to waivers is not entitled to any deference. The trial courts did not err by affirming the board's decisions that Dykstra and Jordan were entitled to TRA benefits.

Affirmed.

1. ADMINISTRATIVE LAW — FEDERAL ADMINISTRATIVE AGENCIES — DEFERENCE TO FEDERAL AGENCY INTERPRETATIONS OF STATUTES.

A court must defer to a federal agency's interpretation of a statute if Congress directly addressed the issue; if Congress did not directly address the issue, that is, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute; Congress's intent must be given effect, and the court must reject administrative constructions that are contrary to clear congressional intent.

2. UNEMPLOYMENT COMPENSATION — TRADE READJUSTMENT ALLOWANCE BEN-
   EFITS — WAIVERS OF TRAINING REQUIREMENT FOR TRADE READJUSTMENT
   ALLOWANCE BENEFITS — DEADLINES FOR TRADE READJUSTMENT ALLOW-
   ANCE BENEFITS APPLICATIONS.

   The deadlines stated in 19 USC 2291(a)(5)(A)(ii) apply only to
   enrollments in approved training programs that are necessary for
   an unemployed worker to be eligible for federal trade readjust-
   ment allowance (TRA) benefits; the deadlines do not apply to
   applications for waivers from the training-program requirement;
   those waivers are subject only to the timing restrictions generally
   applicable to the provision of TRA benefits (19 USC
   2291[a][5][A][i] and [ii], 19 USC 2291[a][5][C], 19 USC 2291[c]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Mark F. Davidson* and *Donna K. Welch*, Assistant Attorneys General, for the Department of Labor and Economic Growth, Unemployment Insurance Agency.

*Pinsky, Smith, Fayette & Kennedy, LLP* (by *H. Rhett Pinsky*), for Tracey Dykstra.

*Kenneth T. Saukas, P.C.* (by *Steven L. Williams*), for Robert D. Jordan.

Before: BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ.

M. J. KELLY, J. In these consolidated appeals, the Department of Labor and Economic Growth, Unemployment Insurance Agency (the Agency), appeals by leave granted the trial court orders affirming the decisions of the Employment Security Board of Review (the Board) granting federal trade readjustment allowance (TRA) benefits to claimants Tracey Dykstra and Robert Jordan under the Trade Act of 1974. See 19 USC 2101 *et seq.* On appeal, we must determine whether the time limits provided under 19 USC 2291(a)(5)(A)(ii) limit the period within which a claimant may obtain a waiver of

the Trade Act's training requirement. See 19 USC 2291(a)(5)(C) and 19 USC 2291(c). We conclude that, under the statute's plain terms, the time limits provided under 19 USC 2291(a)(5)(A)(ii) do not apply to the waivers permitted by 19 USC 2291(a)(5)(C) and 19 USC 2291(c). Further, because the statute is not ambiguous, the Agency had to comply with its terms notwithstanding the contrary interpretation of the United States Department of Labor (the Department). Therefore, the trial courts did not err when they issued orders affirming the Board's decisions. For these reasons, we affirm in both cases.

## I. BACKGROUND, BASIC FACTS, AND PROCEDURAL HISTORY

### A. TRA BENEFITS

Under the Trade Act, Congress established a program of benefits intended to supplement state unemployment benefits for workers who have lost their jobs as a result of competition from imports. See *Int'l Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v Brock*, 477 US 274, 277; 106 S Ct 2523; 91 L Ed 2d 228 (1986).

> Under the Act's scheme, a group of workers, their union, or some other authorized representative may petition the Secretary of Labor to certify that their firm has been adversely affected by imports. [19 USC 2271 to 2273.] If the Secretary issues a certificate of eligibility for such a group, workers within that group who meet certain standards of individual eligibility may then apply for and receive TRA benefits. These benefits are funded entirely by the Federal Government, as is the cost of administering the program. [*Id.*]

Although the Trade Act requires the Secretary of Labor to make the initial certification, the Trade Act permits the secretary "to contract out the job of making

individual eligibility determinations to the state agencies that administer state unemployment insurance programs." *Id.*; see 19 USC 2311(a). In Michigan, the Agency has been empowered to make the individual eligibility determinations. Nevertheless, Congress has charged the Department with the duty of prescribing regulations necessary to carry out the Trade Act, see 19 USC 2320, and the Agency is "bound to apply the relevant regulations promulgated by the Secretary of Labor and the substantive provisions of the Act." *Brock,* 477 US at 278.

In order for a worker to be eligible for benefits, the worker must meet one of three eligibility criteria: the worker must be enrolled in an approved training program, have completed an approved training program, or have obtained a written waiver of the training requirement. See 19 USC 2291(a)(5)(A) to (C); see also 19 USC 2291(c). With regard to the first criterion—enrollment in an approved training program—19 USC 2291(a)(5)(A)(ii) also provides that the worker must enroll no later than the latest of

> (I) the last day of the 16th week after the worker's most recent total separation from adversely affected employment which meets the requirements of [19 USC 2291(a)(1) and (2)],
>
> (II) the last day of the 8th week after the week in which the Secretary issues a certification covering the worker,
>
> (III) 45 days after the later of the dates specified in subclause (I) or (II), if the Secretary determines there are extenuating circumstances that justify an extension in the enrollment period, or
>
> (IV) the last day of a period determined by the Secretary to be approved for enrollment after the termination of a waiver issued pursuant to [19 USC 2291(c)].

Congress added these deadlines in 2002, and they are commonly referred to as the "8/16 deadline." See PL

107-210, § 114(b)(3), 116 Stat 939. The Department explained that the amendment was designed to accelerate a worker's reentry into the work force:

> To promote adjustment and accelerate reemployment, the Reform Act[1] provides that eligibility for TRA, which is additional income support after unemployment insurance (UI) is exhausted, will be contingent on a worker's enrollment in training not later than 16 weeks after separation from employment or 8 weeks after the petition for eligibility has been approved, whichever date is later. In extenuating circumstances, these deadlines for enrollment in training may be extended up to 45 days; and a waiver of the enrollment in training requirement to receive basic TRA may be issued only under limited and specified conditions. The Reform Act also increased the length of time that TRA is available to an adversely affected worker who is in training by increasing the availability of "additional" TRA from 26 to 52 weeks and by further adding up to 26 additional weeks of TRA if a worker is enrolled in a course of remedial education. The primary purpose of this extended income support is to minimize workers' financial hardship until they complete training. By requiring that workers expeditiously enroll in training as a condition of receiving TRA, the Reform Act amendments provide that workers will be more likely to complete the training within the duration of that income support. [71 Fed Reg 50760, 50762 (August 25, 2006).]

To that end, the Department has determined that the deadlines stated in § 2291(a)(5)(A) apply to the waivers permitted under § 2291(c):

> This deadline is either the last day of the 8th week after the week of issuance of the certification of eligibility covering the worker or the last day of the 16th week after the worker's most recent total qualifying separation, whichever is later (commonly referred to as the 8/16 week deadline). The "8/16 week deadline" applies to eligibility

---

[1] PL 107-210, §§ 101 *et seq.*, 116 Stat 939.

for all TRA, both basic and additional TRA. If a worker fails to meet the applicable 8/16 week deadline, then the worker is not eligible for any TRA (basic TRA or additional TRA, including TRA for remedial training) under the relevant certification. In many cases, the 8/16 week deadline for a worker will be reached while the worker is still receiving unemployment insurance (UI). Some workers are not aware that this deadline may apply before they exhaust their UI. The SWA [State Workforce Agency] is responsible for informing workers of these requirements. *The SWA must also assist such workers in enrolling in an approved training program prior to the 8/16 week deadline, or issue the workers waivers prior to the 8/16 week deadline, if appropriate.* [Trade Adjustment Assistance Program, Training and Employment Guidance Letter No 11-02, Change 1, 69 Fed Reg 60903 (October 13, 2004) (emphasis added).]

Thus, under the Department's interpretation of 19 USC 2291(a)(5)(A) to (C), a worker must enroll in training or obtain a waiver before the 8/16 deadline in order to qualify for TRA benefits

In the present cases, the Secretary of Labor certified that both claimants' firms were adversely affected by imports. Hence, both Dykstra and Jordan were entitled to TRA benefits if they met the individual eligibility requirements. However, although both Dykstra and Jordan obtained waivers under 19 USC 2291(c), they did not obtain the waivers within the 8/16 deadline provided under 19 USC 2291(a)(5)(A)(ii). For that reason, the Agency denied both claimants' requests for TRA benefits.

### B. TRACEY DYKSTRA

Dykstra appealed the Agency's decision in April 2005. A hearing referee held a hearing on the matter in June 2005. At the hearing, an unemployment claims examiner for the Agency specializing in TRA claims

testified that Michigan Works![2] was responsible for notifying employees of their right to receive TRA benefits. The examiner indicated that one method of notification used with companies that have large numbers of employees who are being laid off because of foreign competition is to hold an en masse meeting. Dykstra attended such a meeting after she was laid off, but stated that she was not informed that she needed to fill out Form 802, which is the request for waiver of the TRA training requirement permitted by 19 USC 2291(a)(5)(C). Dykstra stated that she filed the form only after she learned about it from a coworker. However, she filed the form after the enrollment deadlines stated in 19 USC 2291(a)(5)(A). The unemployment examiner testified that it was her opinion that Michigan Works! was at fault for Dykstra's untimely filing because it failed to timely notify Dykstra of the need to submit the form. The referee then reversed the Agency's decision to deny Dykstra's application for benefits. The referee reasoned that the failure of Michigan Works! to comply with its statutory duty under 19 USC 2311(f)(1) to notify Dykstra of her eligibility for TRA benefits constituted good cause for her untimely application.

The Agency then appealed to the Board, which affirmed the referee's decision. The Board determined that Dykstra acted on the faulty advice of a Michigan

---

[2] Michigan Works! is an association of local agencies. See MCL 408.113(d). The local agencies are selected by local workforce development boards, which also oversee the entities' provision of workforce services under the Michigan Works One-Stop Service Center System Act, MCL 408.111 *et seq.* See MCL 408.119 and MCL 408.123. The local Michigan Works! agencies are authorized to serve as the administrators for state and federal funding provided for workforce development services and activities. See MCL 408.127, MCL 408.129, and MCL 408.131.

Works! employee. It also rejected the Agency's argument that Michigan Works! was not authorized to act on the Agency's behalf.

On appeal in the circuit court, the Agency argued that TRA benefits were only available to claimants who met the statutory requirements, including the deadlines set forth in 19 USC 2291(a)(5)(A)(ii), and that because Dykstra did not meet the deadlines, she was ineligible for benefits. The Agency asserted that the Board's decision was contrary to law and had to be reversed. It also argued that Dykstra could not use the doctrine of estoppel to expand the deadlines on the basis of governmental workers' errors. The circuit court disagreed and determined that the Agency should be estopped from denying Dykstra benefits when it had failed to exercise its statutory duty. The Agency moved for reconsideration, which was granted in part and denied in part. The circuit court vacated that portion of its previous order applying the doctrine of estoppel, but upheld its previous order to the extent that it awarded Dykstra benefits. It reasoned that the deadlines stated in 19 USC 2291(a)(5)(A)(ii) did not apply to a waiver obtained under 19 USC 2291(a)(5)(C) and 19 USC 2291(c).

### C. ROBERT JORDAN

After a chance encounter with a former coworker, Jordan discovered that he might be eligible to receive TRA benefits. Jordan later went to a local Michigan Works! office and applied for TRA benefits and requested a waiver of the training requirement on the ground that he was within two years of meeting the requirements for retiring. See 19 USC 2291(c)(1)(C). Although Jordan obtained his waiver, the Agency denied him benefits on the ground that he obtained the

waiver outside the deadlines imposed by 19 USC 2291(a)(5)(A)(ii). Jordan appealed the Agency's decision, and the referee assigned to his case held a hearing in April 2005. The referee affirmed the Agency's denial of benefits because Jordan did not file within the statutory deadlines and failed to establish "good cause" for his late application.

Jordan then appealed to the Board. The Board determined that the deadlines in 19 USC 2291(a)(5)(A)(ii) did not apply to the waivers permitted by 19 USC 2291(a)(5)(C). Therefore, because Michigan Works! had issued Jordan a valid waiver, the Board determined that Jordan was eligible for TRA benefits. The Board further found the Agency's argument that Michigan Works! was not its agent to be disingenuous. Accordingly, the Board reversed the referee's decision.

On appeal in the circuit court, the Agency argued that TRA benefits were only available to claimants who met the statutory deadlines set forth in 19 USC 2291(a)(5)(A)(ii). Because Jordan did not meet the requisite deadlines, the Agency contended, he was ineligible for benefits. The Agency also reiterated its argument that the doctrine of estoppel did not apply.

Jordan responded that the Board's decision was not contrary to law because it correctly determined that the deadlines in § 2291(a)(5)(A)(ii) applied only to the enrollment provisions of § 2291(a)(5)(A)(i). He noted that there was no time requirement under the section applicable to waivers. He also argued that it would be inequitable to apply a deadline for benefits that he had not known existed. He asserted that such a result was contrary to the purpose of the law. The Agency countered that the Board's decision was contrary to the Department's interpretation of the statute, which was entitled to deference.

The circuit court held a hearing on the matter in July 2006. In August 2006, the circuit court issued an order affirming the Board's decision.

### D. THE APPEALS

After the circuit courts affirmed the reinstatement of benefits, the Agency applied for leave to appeal in this Court in both cases, which this Court denied for lack of merit. See *Dep't of Labor & Economic Growth, Unemployment Ins Agency v Dykstra,* unpublished order of the Court of Appeals, entered October 16, 2006 (Docket No. 271535); *Dep't of Labor & Economic Growth v Jordan,* unpublished order of the Court of Appeals, entered December 12, 2006 (Docket No. 272634). However, in lieu of granting leave to appeal, our Supreme Court remanded each case to this Court for consideration as on leave granted. See *Dep't of Labor & Economic Growth v Dykstra,* 480 Mich 869 (2007); *Dep't of Labor & Economic Growth v Jordan,* 480 Mich 869 (2007). This Court thereafter consolidated the appeals.

### II. THE STATUTORY DEADLINES

### A. STANDARD OF REVIEW

Congress has determined that the review of a determination by a cooperating state agency is to be done "in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." 19 USC 2311(d). This Court reviews "a lower court's review of an agency decision to determine 'whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings.' " *Dignan v Michigan Pub School Employees Retirement Bd,* 253 Mich App 571,

575; 659 NW2d 629 (2002) (citation omitted). The circuit court's review of the Agency's decision "is limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law." *Id.* at 576. However, this Court reviews de novo the proper interpretation of statutes, such as the Trade Act. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

### B. PRINCIPLES OF AGENCY DEFERENCE

The present case involves the proper interpretation of the Trade Act. As already noted, the Department has interpreted the Trade Act and determined that the deadlines stated under 19 USC 2291(a)(5)(A)(ii) apply to the waivers permitted by 19 USC 2291(a)(5)(C). Because Congress has charged the Department with the responsibility of promulgating regulations to implement the Trade Act, see 19 USC 2320, the Department's interpretation of the relevant statutory provisions may be entitled to deference. See *Chevron USA, Inc v Natural Resources Defense Council, Inc*, 467 US 837, 842-843; 104 S Ct 2778; 81 L Ed 2d 694 (1984). As the Supreme Court explained in *Chevron*, whether a court must defer to an agency's interpretation of a statute depends first on whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.*; see also *State Treasurer v Abbott*, 468 Mich 143, 148; 660 NW2d 714 (2003). However, if Congress has not directly addressed the precise question at issue, the reviewing

court does not "simply impose its own construction on the statute . . . . Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 US at 843.

This deference follows from Congress's decision to commit the administration of a particular program to the agency:

> "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency. [*Id.* at 843-844 (citation omitted).]

The level of deference is strong; the "court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n 11. Nevertheless, the Supreme Court noted that, ultimately, the

> judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise

question at issue, that intention is the law and must be given effect. [*Id.,* at 843 n 9 (citations omitted).]

Accordingly, the first question that must be answered is whether Congress has spoken on the issue of a deadline for filing a training waiver.

### C. TIMING AND WAIVERS

The Agency argues that, because 19 USC 2291(a)(5)(C) is silent or ambiguous with regard to time constraints, this Court must defer to the Department's interpretation that the enrollment deadlines provided under 19 USC 2291(a)(5)(A)(ii) should also apply to the waivers permitted under 19 USC 2291(a)(5)(C). However, this Court will not read statutes in isolation, and, after examining the statutory scheme as a whole, see *Macomb Co Prosecutor v Murphy,* 464 Mich 149, 159-160; 627 NW2d 247 (2001), we do not agree that Congress was silent on the timing applicable to the waivers permitted by § 2291(a)(5)(C).[3]

---

[3] We note that the Department is rewriting the applicable regulations, which will be codified at 20 CFR 618, and has recognized that it is possible that Congress did not intend for the deadlines stated in 19 USC 2291(a)(5)(A)(ii) to apply to waivers. See 71 Fed Reg 50760 (August 25, 2006). The Department has solicited public comment on this issue:

A related issue, on which the Department seeks public comment, is whether the deadlines should apply to waivers of the training requirement in the case of adversely affected workers who do not enroll in training by the applicable deadline; whether the issuance of a waiver after the deadline has passed can revive eligibility for basic TRA. The Department's current position, reflected in § 618.725(a) [of the proposed regulations], is that an adversely affected worker who neither enrolls in training by the applicable deadline, nor receives a waiver of the training requirement by that deadline, may not become eligible for TRA by later receiving such a waiver. This position was articulated in the operating instructions in Training and Employment Guidance Letter (TEGL) No. 11-02, Change 1 (69 FR 60903 (2004)), which interpreted [19 USC 2291(a)(5)(A)] as imposing "a deadline by

A worker does not have to apply for TRA benefits in order to be eligible for training, but he or she does need to meet at least one of the training requirement alternatives stated in § 2291(a)(5) in order to receive monetary benefits. See 19 USC 2291(a); 19 USC 2296; 20 CFR 617.11. Section 2291(a)(5) clearly provides three alternative ways to meet the training requirement: enroll in training, complete training, or obtain a waiver of the training requirement. See also 20 CFR 617.11(a)(2)(vii)(A). Although the statute does provide a specific deadline within which the enrollment alternative must be met, Congress unequivocally provided that the deadlines stated in 19 USC 2291(a)(5)(A)(ii) were to apply to the "enrollment required under clause (i)." Likewise, when crafting an extension for extenuating circumstances, Congress clearly indicated that the extension applied to the "enrollment period." 19 USC 2291(a)(5)(A)(ii)(III). Hence, under a plain reading, it appears that Congress intended the timing deadlines stated in § 2291(a)(5)(A)(ii) to apply only to enrollments under § 2291(a)(5)(A)(i). Further, the provision of a

---

which a worker must be enrolled in approved training, or have a waiver of this requirement, in order to be eligible for TRA." However, a CSA [cooperating state agency] recently brought to the Department's attention an alternative reading, based on the structure of the Act, that the applicable deadline applies only to enrollment in training and not to waivers of the training requirement. The argument is that the alternative deadlines are contained only in the Act's provision on the enrollment in training requirement, [19 USC 2291(a)(5)(A)]; that language in [19 USC 2291(a)(5)(A)(ii)] suggests the requirement applies only to the enrollment in training requirement in [19 USC 2291(a)(5)(A)(i)]; and that the alternative requirement that the worker receive a waiver of the training requirement is contained in a separate provision, [19 USC 2291(a)(5)(C)] of the Act. While this argument is plausible, the Department is concerned that it effectively undermines Congress' intent that TAA-eligible [eligible for trade adjustment assistance] workers be quickly returned to work or quickly provided with the training they need to succeed in the labor market. In light of this argument, the Department encourages public comments on this issue. [*Id.* at 50784-50785.]

deadline for the enrollment alternative without providing a similar deadline for the waiver alternative is consistent with the statutory scheme and the purpose behind the TRA benefits.

As the Agency aptly notes, the primary purpose of TRA benefits is to assist workers who have lost their jobs because of competition from imports to quickly return to suitable employment. See 20 CFR 617.2; see also 19 USC 2102(4). Congress has determined that this goal can best be accomplished in many cases by retraining the adversely affected worker. See, e.g., 19 USC 2291(a)(5). In such cases, it makes sense to require the worker to demonstrate a commitment to be retrained by requiring the worker to enroll in an approved training program within a specified time. However, Congress also determined that TRA benefits should be paid to some workers who are adversely affected by foreign competition even without the worker completing or enrolling in a retraining program. To this end, Congress empowered the Secretary of Labor to waive the training requirement imposed under 19 USC 2291(a)(5)(A).[4] See 19 USC 2291(a)(5)(C); 19 USC 2291(c). And the purpose behind a strict deadline for enrollment in retraining does not apply equally to cases involving waivers.

A worker can only qualify for a waiver of the training requirement when there are circumstances that make it "not feasible or appropriate for the worker" to enroll in a training program. 19 USC 2291(c)(1). These circum-

---

[4] We find it noteworthy that Congress framed this authority as the power to waive "the requirement to be enrolled in training described in subsection (a)(5)(A)," which is the same subsection that contains the deadlines. See 19 USC 2291(c)(1). Because the deadlines are contained in this subsection, when waiving the requirements of § 2291(a)(5)(A), the Secretary of Labor also presumably waives the accompanying deadlines. This is evidence that Congress contemplated that the Secretary of Labor might issue waivers even after the deadlines found in § 2291(a)(5)(A)(ii).

stances include situations in which the worker will be recalled to work, already has marketable skills, will be retiring, or has health issues that preclude enrollment in an approved training program or when an approved program is unavailable or the worker has good reason for delaying enrollment. See 19 USC 2291(c)(1)(A) to (F). Thus, Congress has specifically provided that TRA benefits may be available to workers who will not participate in a training program. Indeed, in the case of workers who are about to retire, the worker may never even return to active employment.[5] In such cases, a strict deadline would serve only to deprive workers of the TRA benefits that Congress deemed appropriate. Further, given that some circumstances that give rise to eligibility for a waiver may not be known within the deadlines provided under § 2291(a)(5)(A)(ii), application of those deadlines to the training waivers permitted under § 2291(a)(5)(C) might defeat the purpose behind the waiver provision. It is also noteworthy that Congress provided limits on the provision of TRA benefits, which include general limitations on the period within which benefits may be paid to a worker. See 19 USC 2291(a)(1) (requiring workers to apply for TRA benefits before the expiration of a two-year period or the termination of certification); 19 USC 2293 (placing substantive limits on the payment of TRA benefits). Thus, Congress actually provided deadlines for the provision of benefits that are applicable to benefits paid under a waiver of the training requirement. These deadlines are consistent with the purpose behind the waiver provision and Congress's decision to limit the application of the deadlines stated in § 2291(a)(5)(A)(ii) to the enrollment provision found in § 2291(a)(5)(A)(i). We further note that Congress crafted specific limitations

---

[5] This is may very well be the case for Jordan.

on the duration of waivers and provided for the revocation of waivers when the basis for granting the waiver is no longer applicable.[6] 19 USC 2291(c)(2). Hence, in addition to directly limiting application of the deadlines found under § 2291(a)(5)(A)(ii), Congress provided clear guidance on the timing and efficacy of waivers.

### D. CONCLUSION

When the relevant statutory scheme is interpreted as a whole, Congress's decision to limit the strict deadlines specified under § 2291(a)(5)(A)(ii) to enrollments under § 2291(a)(5)(A)(i) and its refusal to create a similar deadline for the waivers permitted by § 2291(a)(5)(C) must be understood to have been deliberate. For this reason, we conclude that Congress was not silent on the issue; rather, Congress unambiguously provided that the deadlines stated in § 2291(a)(5)(A)(ii) only applied to the enrollment option provided by § 2291(a)(5)(A)(i). And Congress clearly intended the waivers permitted by § 2291(a)(5)(C) to be subject only to the timing restrictions generally applicable to the provision of TRA benefits. See 19 USC 2291(a)(1). Because Congress's intent is clear, the Department's determination that the § 2291(a)(5)(A)(ii) deadlines should apply to the waivers permitted under § 2291(a)(5)(C) and § 2291(c) is not entitled to any deference. Indeed, because the Department's

---

[6] Congress also provided that, when a waiver is revoked, a worker might still obtain TRA benefits under the enrollment provision if the worker enrolls in an approved training program within a period set by the Secretary of Labor after the termination of the waiver. See 19 USC 2291(a)(5)(A)(ii)(IV). It is telling that Congress did not choose to effect this provision through a tolling mechanism—that is, Congress did not provide that the grant of a waiver tolls the period provided under § 2291(a)(5)(A)(ii). Instead, it authorized the secretary to establish a new period after the revocation of the waiver. The decision to handle revocations in this manner further suggests that Congress understood that a waiver could be granted outside the period provided under 19 USC 2291(a)(5)(A)(ii).

construction of the statutory scheme contradicts Congress's unambiguously stated intent to limit application of the § 2291(a)(5)(A)(ii) deadlines, we must reject that construction.[7] *Chevron*, 467 US at 843 n 9. With regard to both claimants, the Board properly determined that the claimants were entitled to TRA benefits. Because the Board did not err in this regard, the trial courts properly affirmed the Board's decisions.

We are cognizant that at least one foreign jurisdiction has determined that the statutory language at issue is sufficiently ambiguous to warrant deference to the Department's interpretation. See *Wisconsin Dep't of Workforce Dev v Labor & Industry Review Comm*, 297 Wis 2d 546; 725 NW2d 304 (Wis App, 2006); see also *Lowe v Unemployment Compensation Bd of Review*, 877 A2d 494, 498 (Pa Cmwlth, 2005). However, foreign authorities are not binding on this Court, and we find these authorities unpersuasive. See *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006) (noting that judicial decisions from foreign jurisdictions are not binding on this Court). The statutory provisions at issue are not ambiguous, and we will enforce them as written.[8] See *Macomb Co Pros-*

---

[7] We also do not share the Agency's concern that it must follow the Department's interpretation or risk breaching its agreement with the Department. Under the Department's own regulations, the Agency is tasked with following the law. See 20 CFR 617.59. And because we have determined that Congress plainly provided that the deadlines stated in 19 USC 2291(a)(5)(A)(ii) do not apply to waivers, that determination is the law and must be given effect. *Chevron*, 467 US at 843 n 9.

[8] Even if we were to conclude that the statutory language was ambiguous, we would nevertheless decline to defer to the Department's construction. The Department's interpretation is not codified as a regulation. Instead, the Department's interpretation is found in a letter intended to provide guidance to the various agencies charged with making TRA benefit determinations. Hence, it is not entitled to *Chevron* deference. See *United States v Mead Corp*, 533 US 218, 231-235; 121 S Ct 2164; 150 L Ed 2d 292 (2001) (explaining that agency policy statements, manuals, and enforcement guidelines are not entitled to *Chevron* defer-

*ecutor*, 464 Mich at 158 (noting that courts will enforce unambiguous statutes as written).

There were no errors warranting relief.[9]

Affirmed in both cases. Because the cases involved important questions of public policy, none of the parties may tax costs under MCR 7.219.

---

ence). Further, although the letter is persuasive authority, see *Skidmore v Swift & Co*, 323 US 134, 140; 65 S Ct 161; 89 L Ed 124 (1944), because the letter is inconsistent with the statute's language and underlying purpose, we would decline to follow it.

[9] Given our resolution of this issue, we decline to address the parties' alternative arguments concerning estoppel.