# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF LICENSING & REGULATORY AFFAIRS, UNEMPLOYMENT INSURANCE AGENCY/TRA SPECIAL PROGRAMS UNIT,

Petitioner-Appellant,

v

MOHAMMED KHAN,

Respondent-Appellee.

FOR PUBLICATION
June 11, 2015
9:05 a.m.

No. 318799
Macomb Circuit Court
LC No. 2013-001578-AE

Before: SAAD, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Following a remand from the Supreme Court to review this case as on leave granted,[1] petitioner appeals an order of the circuit court affirming the Michigan Compensation Appellate Commission's (MCAC's) determination that respondent is entitled to federal trade readjustment allowance (TRA) unemployment benefits under the Trade Act of 1974, 19 USC 2101 *et seq.* We affirm.

This case concerns respondent's attempt to obtain TRA benefits even though he did not participate in training classes, which are a prerequisite to eligibility, or to timely file a waiver of training. These benefits are offered under a federal program to those whose "firm has been adversely affected by imports" and whose employment has been affected as a result. *Dep't of Labor & Economic Growth, Unemployment Ins Agency v Dykstra*, 283 Mich App 212, 215; 771 NW2d 423 (2009). Essentially, a group of workers first seeks approval to become certified for the program and then the affected workers seek individual eligibility. Although the program is entirely federally funded, petitioner—through Michigan Works! at the time of respondent's filing—administers the eligibility portion of the program.

---

[1] *Dep't of Licensing & Regulatory Affairs, Unemployment Ins Agency, TRA Special Programs Unit v Khan*, 497 Mich 945; 857 NW2d 41 (2014).

-1-

On October 22, 2009, workers at respondent's employer, Technicolor, were certified for eligibility for TRA benefits   Respondent was separated from his employment at Technicolor on January 4, 2010 and, on March 24, 2010, he signed a document acknowledging that he had 26 weeks from separation, i.e., until July 5, 2010, to enroll in classroom training or to contact the Michigan Works! office to request a waiver.[2]  However, respondent did not enter training.  He acknowledged below that he simply forgot to do so, and that he only remembered the deadline after seeing some of his colleagues going to the training.  Petitioner denied respondent's request for TRA benefits.  Respondent sought a redetermination of petitioner's decision, which was denied on the basis that respondent's September 7, 2011 request to waive training was untimely. Respondent appealed that decision to the Michigan Administrative Hearings System.  Following a hearing on February 1, 2012, the administrative law judge issued a written decision in which he determined that respondent was entitled to benefits because the 26-week deadline contained in the 2009 version of 19 USC 2291(a)(5)(A)(ii) applied only to enrollments in training and not to waivers of training, which were instead covered under 19 USC 2291(a)(1), a statute that did not contain this time limit.  In reaching this decision, the administrative law judge relied on this Court's decision in *Dykstra*, which, discussing the 2002 version of the statue, found that even though the United States Department of Labor (USDL) had a contrary interpretation concerning the then 16-week deadline, that interpretation was not entitled to any deference.  *Dykstra*, 283 Mich App at 229.  In this case, petitioner appealed the administrative law judge's decision to the MCAC, which affirmed on the basis that *Dykstra* constituted binding precedent.  The MCAC noted that the result was consistent with a 2011 MCAC decision where the commission found that another individual was entitled to TRA benefits under *Dykstra*.  The trial court affirmed on similar grounds.

Petitioner argues that the MCAC and the circuit court erred in finding that this case is governed by *Dykstra*'s holding.  Noting that Congress amended the Trade Act in 2009 to change the relevant deadlines under 19 USC 2291(a)(5)(A)(ii) from 8 and 16 to 26 and 26 weeks, petitioner essentially argues that Congress's continued silence as to whether the deadlines apply to those seeking a waiver acts as an adoption of the USDL's interpretation that the deadlines apply.  Petitioner argues that *Dykstra* no longer is good law and has no precedential value.

A circuit court may reverse a decision of the MCAC only if it is "contrary to law or is not supported by competent, material, and substantial evidence on the whole record."  MCL 421.38(1).

> [W]hen [this Court] review[s] a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings.  This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence.  As defined in numerous other contexts, a finding is clearly

---

[2] The act also provides for an alternate deadline under 19 USC 2291(a)(5)(A)(ii)(II), which is not at issue in this appeal.

erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Boyd v Civil Serv Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996).]

As a part of its role in administering the TRA program:

[E]ach of these "cooperating Stat[e] agencies," [19 USC 2311(a)], becomes an "agent of the United States," [19 USC 2313(a)], charged with processing applications and using federal funds to pay TRA benefits to individuals eligible under the Act. Review of eligibility decisions by these agencies is to be "in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." [19 USC 2311(d)]. In making these eligibility determinations, however, state authorities are bound to apply the relevant regulations promulgated by the Secretary of Labor and the substantive provisions of the Act. 29 CFR § 91.51(c) (1985). [*Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Brock*, 477 US 274, 277-278; 106 S Ct 2523; 91 L Ed 2d 228 (1986); see also *Dykstra*, 283 Mich App at 215.]

In this case, as discussed in detail in *Dykstra*, the general question is whether the deadlines in 19 USC 2291(a)(5)(A)(ii) apply to individuals who seek waivers for training, as well as to those enrolled in an approved training program and what, if any, deference is to be given to the interpretation of the Trade Act by the USDL as to this issue.

Addressing the 2002 version of the Trade Act, the *Dykstra* Court discussed the then-current deadlines contained in 19 USC 2291(a)(5)(A)(ii):

In order for a worker to be eligible for benefits, the worker must meet one of three eligibility criteria: the worker must be enrolled in an approved training program, have completed an approved training program, or have obtained a written waiver of the training requirement. See 19 USC 2291(a)(5)(A) to (C); see also 19 USC 2291(c). With regard to the first criterion—enrollment in an approved training program—19 USC 2291(a)(5)(A)(ii) also provides that the worker must enroll no later than the latest of

(I) the last day of the 16th week after the worker's most recent total separation from adversely affected employment which meets the requirements of [19 USC 2291(a)(1) and (2)],

(II) the last day of the 8th week after the week in which the Secretary issues a certification covering the worker,

(III) 45 days after the later of the dates specified in subclause (I) or (II), if the Secretary determines there are extenuating circumstances that justify an extension in the enrollment period, or

(IV) the last day of a period determined by the Secretary to be approved for enrollment after the termination of a waiver issued pursuant to [19 USC 2291(c)]. [*Dykstra*, 283 Mich App at 216.]

Citing a 2004 guidance letter from the USDL, the *Dykstra* Court observed that the USDL had interpreted these "8/16 deadlines" to apply to those also seeking a waiver. *Id*. at 217-218.

However, after discussing general principles of administrative agency deference, the proper interpretation of statutory language, the language of the Trade Act, as well as the stated purposes of the act, the *Dykstra* Court held both that the deadlines were not applicable to waivers and, more specifically, that the USDL's interpretation was entitled to no deference:

> When the relevant statutory scheme is interpreted as a whole, Congress's decision to limit the strict deadlines specified under § 2291(a)(5)(A)(ii) to enrollments under § 2291(a)(5)(A)(i) and its refusal to create a similar deadline for the waivers permitted by § 2291(a)(5)(C) must be understood to have been deliberate. For this reason, we conclude that *Congress was not silent on the issue*; rather, Congress unambiguously provided that the deadlines stated in § 2291(a)(5)(A)(ii) only applied to the enrollment option provided by § 2291(a)(5)(A)(i). And Congress clearly intended the waivers permitted by § 2291(a)(5)(C) to be subject only to the timing restrictions generally applicable to the provision of TRA benefits. See 19 USC 2291(a)(1). *Because Congress's intent is clear*, the Department's determination that the § 2291(a)(5)(A)(ii) deadlines should apply to the waivers permitted under § 2291(a)(5)(C) and § 2291(c) is not entitled to any deference. Indeed, because the Department's construction of the statutory scheme contradicts Congress's unambiguously stated intent to limit application of the § 2291(a) (5)(A)(ii) deadlines, we must reject that construction.[7] [*Chevron USA, Inc v Natural Resources Defense Council, Inc*, 467 US 837, 843 n 9; 104 S Ct 2778; 81 L Ed 2d 694 (1984)]. With regard to both claimants, the Board properly determined that the claimants were entitled to TRA benefits. Because the Board did not err in this regard, the trial courts properly affirmed the Board's decisions.

---

[7] We also do not share the Agency's concern that it must follow the Department's interpretation or risk breaching its agreement with the Department. Under the Department's own regulations, the Agency is tasked with following the law. See 20 CFR 617.59. And because we have determined that Congress plainly provided that the deadlines stated in 19 USC 2291(a)(5)(A)(ii) do not apply to waivers, that determination is the law and must be given effect. *Chevron*, 467 US at 843 n 9.

[*Dykstra*, 283 Mich App at 229-230 (emphasis added).]

Petitioner acknowledges that, as to the interpretation of the 2002 law, *Dykstra* is binding on this Court. See MCR 7.215(J)(1). However, petitioner argues that *Dykstra* is not binding in this case because it involved the 2002 version of the Trade Act rather than the 2009 version of

the act at issue in this appeal. According to petitioner, the 2009 amendment extended the 8/16 week deadline to 26/26 weeks because of criticism raised by the Government Accountability Office, which in turn referenced the earlier deadline as applying to the issuance of training waivers.[3]

Petitioner concedes that, similar to the previous version of the act, the 2009 amendment did not set forth a deadline by which a claimant must act to waive the training requirement. However, petitioner asserts that it need not have done so given the USDL's continued interpretation that the training deadline also applies to waivers. As petitioner sees it, Congress effectively adopted the USDL's waiver deadline interpretation when it amended the Trade Act in 2009 without explicitly setting forth a deadline for waivers. In support of its argument, petitioner cites to *Lorillard v Pons*, 434 US 575, 580; 98 S Ct 866; 55 L Ed 2d 40 (1978), in which the United States Supreme Court voiced the rule of construction that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."

In other words, petitioner argues that this Court should use the doctrine of "legislative acquiescence" to find that the USDL's interpretation of the statute is correct.

> [L]egislative acquiescence has been repeatedly repudiated by this Court because it is as an exceptionally poor indicator of legislative intent. . . . [T]he theory requires a court to intuit legislative intent not by anything that the Legislature actually enacts, but by the *absence* of action. Yet a legislature legislates by legislating, not by doing nothing, not by keeping silent. Thus, the doctrine of legislative acquiescence is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature's intent from its *words,* not from its silence. [*McCahan v Brennan*, 492 Mich 730, 749-750; 822 NW2d 747 (2012) (quotation marks and citations omitted; emphasis in original).]

Moreover, under the legislative acquiescence doctrine, Congress would have been on notice of the *Dykstra* holding as well as the USDL's interpretation, a fact which undercuts petitioner's claim that Congress intended to have the USDL's interpretation apply in Michigan. Again, *Dykstra* specifically held that Congress had deliberately acted to remove the seeking of a waiver from the time limits found in 19 USC 2291(a)(5)(A)(ii) and held, contrary to petitioner's repeated assertion, that Congress was not silent on the issue. *Dykstra*, 283 Mich App 229. Congress had no need to act again, having already acted to provide that waivers could be sought at any time. Further, petitioner's recitation of the USDL's continued opposite interpretation of the act is unpersuasive because *Dykstra* specifically concluded that the USDL's interpretation of the provisions of the Trade Act was not entitled to any deference.

---

[3] The 2011 amendments expired and the initial 8/16 week deadline is now again in effect.

Finally, petitioner's argument that it is required to follow the USDL's interpretation or risk breaching its agreement was rejected by *Dykstra*, 283 Mich App at 230 n 7, and petitioner does not refer us to any negative action taken by the USDL in response to that decision.

Affirmed.


/s/ Henry William Saad
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro