# STATE OF MICHIGAN

# COURT OF APPEALS

---

CIENA HEALTHCARE MANAGEMENT,
DIMONDALE NURSING CARE CENTER,
WEST OAKS SENIOR CARE AND REHAB
CENTER, THE COURTS OF HOLT, SAGINAW
HOME OF COMPASSIONATE CARE,
DURAND SENIOR CARE AND REHAB
CENTER, EVERGREEN MANOR SENIOR
CARE CENTER, FAITH HAVEN LIVING
CENTER, LIVONIA WOODS NURSING AND
REHAB, NORTHFIELD PLACE, ROYAL
NURSING CENTER, EASTWOOD NURSING
CENTER, GOLDEN OAKS MEDICAL CARE
FACILITY, and ROYALTON MANOR,

   Petitioners-Appellees,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

   Respondent-Appellant.

UNPUBLISHED
July 14, 2015

No. 321027
Shiawassee Circuit Court
LC No. 13-004740-AA

---

CIENA HEALTHCARE MANAGEMENT,
NORTHFIELD PLACE, ROYAL NURSING
CENTER, EASTWOOD NURSING CENTER,
GOLDEN OAKS MEDICAL CARE FACILITY,
and ROYALTON MANOR,

   Petitioners-Appellants,

and

DIMONDALE NURSING CARE CENTER,
WEST OAKS SENIOR CARE AND REHAB
CENTER, THE COURTS OF HOLT, SAGINAW
HOME OF COMPASSIONATE CARE,
DURAND SENIOR CARE AND REHAB
CENTER, EVERGREEN MANOR SENIOR

-1-

CARE CENTER, FAITH HAVEN LIVING
CENTER, and LIVONIA WOODS NURSING
AND REHAB,

        Petitioners,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Respondent-Appellee.

No.  321066
Shiawassee Circuit Court
LC No.  13-004740-AA

Before:  O'CONNELL, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated appeals involving a dispute over Medicaid reimbursement, the parties appeal by leave granted the circuit court's order following review of an administrative decision.  In docket number 321027, respondent, Department of Health and Human Services, appeals the circuit court's decision to reverse the agency's order with respect to the nursing homes managed by NexCare Health Systems, LLC.[1]  In docket number 321066, petitioners appeal the circuit court's decision to affirm the agency's final order with respect to Ciena Healthcare Management, Inc. and the nursing homes it operates.[2]  For the reasons more fully explained below, we affirm the circuit court's order with respect to Ciena, but reverse in part with respect to the NexCare nursing homes.

---

[1] Dimondale Nursing Care Center, West Oaks Senior Care Rehab Center, The Courts of Holt, Saginaw Home of Compassionate Care, Durand Senior Care and Rehab Center, Evergreen Manor Senior Care Center, Faith Haven Living Center, and Livonia Woods Nursing and Rehab are NexCare facilities.  The management company, NexCare Health Systems, LLC, is not a party to this appeal.

[2] Ciena operates Northfield Place, Royal Nursing Center, Eastwood Nursing Center, Golden Oaks Medical Care Facility, and Royalton Manor.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Ciena and NexCare are unrelated Michigan corporations that operate several nursing homes, each of which is a legal entity distinct from its managing corporation. Ciena and NexCare contract with the Department[3] to provide nursing home services to eligible individuals under the joint state and federal Medicaid program. 42 USC 1396 *et seq.*; MCL 400.1 *et seq.* In order to be reimbursed for the services, Ciena and NexCare submit annual cost reports to the Department itemizing the costs each facility spent to serve Medicaid beneficiaries. If the Department's audit reveals that a cost report contains incorrect data, such as non-allowable expenses, it will use corrected information to set future repayment rates and, under certain circumstances, will retroactively change a previously applied rate. Apart from some exceptions that do not apply to this case, a provider who disputes an adverse audit may request a formal hearing. MCL 24.271 *et seq.*

The Department audited petitioners' cost reports for fiscal years 2007 and 2008, and disallowed $547,318 in interest expenses claimed by Ciena's home office, and more than $1 million in combined interest expenses claimed by the individual NexCare homes. In both cases, the Department disallowed the expense under § 8.8 of Michigan's Medicaid Provider Manual:[4]

> Working capital borrowings are considered funds borrowed for a relatively short period to meet current normal operating expenses. Interest on current indebtedness—loan amounts meeting program working capital criteria is allowable, whereas interest expense for long-term working capital indebtedness is not considered allowable. The nursing facility must document the reason(s) and need for the working capital loan. The use must be to meet normal operating expenses and must be supported by an application of funds analysis demonstrating the use of loan proceeds for nursing facility expenses. The loan must include/require repayment of the principle [sic] balance within a prescribed time period, including regular scheduled repayment amounts applying to the principle [sic] borrowings amount. The loan must meet allowable cost principles. [Provider Manual at 46.]

At issue for Ciena is the interest on 21 promissory notes securing loans from individuals, couples, and trusts, most of which were issued in 2004 and 2005. The interest rates on the loans ranged from 11% to 12%, and the notes required monthly interest-only payments. Ciena deposited the borrowed funds into its home account and then disbursed them to the individual homes as needed to cover losses and, among other things, to make capital improvements.

---

[3] At the time of the proceedings below, the applicable department was the Department of Community Health, but its responsibilities were later transferred to the Department of Health and Human Services. See Executive Order 2015-4.

[4] We refer to Michigan's Medicaid Provider Manual as the Provider Manual. During the time at issue, the federal government issued an analogous Provider Reimbursement Manual, which we refer to as the Reimbursement Manual.

At issue for the NexCare petitioners is interest claimed on eight lines of credit taken out by individual homes between March 2002 and January 2007. The oldest line of credit was converted into a 3-year note in 2006, and six more lines of credit were bundled into an obligated group debt instrument issued by Bank of America in December 2008. The eighth facility opened a $1 million line of credit in 2004 and at the time of the audit had not converted it into some other type of debt instrument. The Department allowed the interest expense on these lines of credit in 2005 and 2006, but disallowed the interest expense in 2007 and 2008, reasoning that the lines of credit became long-term debt when converted into the debt instruments.

After receiving the adverse results, Ciena and NexCare separately requested formal hearings. At their request, the hearing officer consolidated their appeals, and the parties filed a joint stipulation of issues, law, and facts. After three hearings and review of the parties' briefs and evidence, the hearing referee found against petitioners on every issue and confirmed the Department's decision to disallow the interest expenses. The hearing officer specifically determined:

1. The Department applied the proper tests of allowability when it disallowed the interest expense on (1) the Ciena promissory notes and (2) the lines of credit of the NexCare Homes. . . .

2. The [] Provider Manual . . . appl[ies] to the Ciena promissory notes and the lines of credit of the NexCare homes . . . in the cost reporting periods that are the subject of this appeal.

3. The interest on the Ciena [and] NexCare . . . borrowings is not an "allowable cost" pursuant to [Reimbursement Manual]-15 Section 202.1.

4. The [Provider Manual] was properly promulgated as part of the state plan pursuant to 42 USC 1396a and its implementing regulations.

* * *

8. The Office of Audit is not barred from applying policies introduced into the [Provider Manual] in a subsequent cost reporting period to interest expense on borrowings that have not been disallowed in a prior cost reporting period.

9. The Office of Audit is not barred from retrospectively applying the policy in Section 8.8 specifically related to long term borrowings to short term borrowings before the borrowings are actually converted to long term borrowings.

* * *

11. The "prudent buyer" principle was another basis to disallow the interest expense on the Ciena promissory notes.

12. The "related party" principle was another basis for disallowing the interest expense on the Ciena promissory notes and it was proper for the Department to disallow the same.

-4-

After reviewing petitioners' exceptions to the hearing referee's findings, the Department's Director entered a final order adopting the referee's conclusions. Petitioners appealed the final order to the circuit court, which issued an order affirming the referee's findings and rulings with respect to Ciena, but reversing with respect to the NexCare homes. After the circuit court denied the parties' motions for reconsideration, the parties applied to this Court for leave to appeal. This Court granted leave and consolidated the appeals.[5]

## II. AGENCY REVIEW

"This Court reviews a lower court's review of an agency decision to determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Department of Labor & Economic Growth v Dykstra*, 283 Mich App 212, 222; 771 NW2d 423 (2009) (quotation marks and citation omitted). When reviewing an agency's decision, the circuit court is "limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law." *Id.* at 223 (quotation marks and citation omitted); see also MCL 24.306.

"When reviewing whether an agency's decision was supported by competent, material, and substantial evidence on the whole record, a court must review the entire record and not just the portions supporting an agency's findings." *Great Lakes Sales, Inc v State Tax Comm*, 194 Mich App 271, 280; 486 NW2d 367 (1992). Substantial evidence is evidence "that a reasoning mind would accept as sufficient to support a conclusion." *Monroe v State Employees' Retirement Sys*, 293 Mich App 594, 607; 809 NW2d 453 (2011) (quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla' but less than 'a preponderance' of the evidence." *Huron Behavioral Health v Department of Behavioral Health*, 293 Mich App 491, 497; 813 NW2d 763 (2011) (citation omitted). "If there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *VanZandt v State Employees Ret Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005). "Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views." *Monroe*, 293 Mich App at 607 (quotation marks and citation omitted). This is particularly true with regard to "witness credibility and evidentiary questions." *VanZandt*, 266 Mich App at 588.

---

[5] See *Ciena Healthcare Mgt v Dep't of Community Health*, unpublished order of the Court of Appeals, issued August 18, 2014 (Docket No. 321027); *Ciena Healthcare Mgt v Dep't of Community Health*, unpublished order of the Court of Appeals, issued August 18, 2014 (Docket No. 321066).

## B. DOCKET NO. 321027

The Department conceded in the circuit court and in its brief on appeal that it should have allowed the interest on the line of credit taken out by Durand Senior Care and Rehab because the loan was less than one year old. It argues on appeal, however, that the circuit court erroneously extended this concession to the other seven NexCare homes, and thus clearly erred by reversing the final order with respect to all the NexCare facilities rather than with respect to the Durand facility alone. We agree that the circuit court erred by reversing the final order with respect to all of the NexCare facilities, but not for the reason advanced by the Department.

Contrary to the Department's assertion, the circuit court did not reverse the final order with regard to NexCare by erroneously extending its finding that the Durand facility should have been allowed to claim the interest expense on its line of credit. Rather, the circuit court reversed because it agreed with NexCare that the interest paid on the lines of credit should have been allowed up to the time when the lines were refinanced. In drawing this conclusion, however, the circuit court failed "to accord due deference to administrative expertise" and improperly invaded "administrative fact finding by displacing [the] agency's choice between two reasonably differing views." *Monroe*, 293 Mich App at 607.

The relevant question with regard to the NexCare homes was whether loans, which were initially considered short term, could be treated as long-term debt before actually being formally converted to a long-term debt instrument. The hearing referee found that the lines of credit taken out by the NexCare homes had taken on the character of long-term debt before the time they were refinanced into long-term debt. Accordingly, the referee determined that their retrospective classification was proper, and that the auditor properly determined that the lines of credit were not funds borrowed for a relatively short time to meet current normal operating expenses.

The circuit court, however, rejected that contention and reversed, not because the record showed that NexCare's loans had not taken on the character of long-term debt, but because it felt that it was reasonable to treat the loans as short-term until formally converted. The circuit court based its decision on the form of the loans, but the hearing referee looked not just at the timing, but also at how the facilities used the loans. Because the referee's view was reasonable and supported by the record, the circuit court was obligated to defer to the hearing referee's administrative expertise. *Id.* at 607. Absent any indication that the record was insufficient to support the referee's findings, the court was prohibited from "substituting its judgment for that of the agency, even if the court might have reached a different result." *VanZandt*, 266 Mich App at 584. By substituting its own judgment for that of the agency, the circuit court committed clear error. *Id.* at 596. For these reasons, we reverse the circuit court's order with regard to the seven non-Durand homes.

## C. DOCKET NO. 321066

Although petitioners assign several errors to the circuit court in this docket, the dispositive issue is whether § 8.8 of the Provider Manual is valid. Petitioners do not dispute that when they enrolled in the Medicaid program administered they signed agreements stating that they would read and comply with the Provider Manual and with the Department's "*policies and procedures* for the Medical Assistance Program contained in the *manual, manual updates,*

*provider bulletins, and other program notifications*." They also do not dispute that they agreed to comply with the provisions of 42 USC 405 and MCL 400.1 *et seq*. Also undisputed is the fact that Ciena's promissory notes do not require repayment of the loan principal within a "prescribed period," or that Ciena has been making interest-only payments on most of the loans for at least two years, and for even longer on some of the loans. Thus, if § 8.8 is valid, it would necessarily follow that the interest on those promissory notes would not be eligible for reimbursement. Accordingly, petitioners claim that § 8.8 of the Provider Manual is invalid because it changes the state plan with regard to whether an expense is allowable and therefore cannot be enforced until it is approved by the Centers for Medicare and Medicaid Services.

Michigan's state plan incorporates 42 CFR 413.153 and Reimbursement Manual-15, § 202.1 as guidelines for identifying allowable costs. 42 CFR 413.153(a)(1) provides that "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost." It defines interest as follows:

> Interest is the cost incurred for the use of borrowed funds. Interest on current indebtedness is the cost incurred for funds borrowed for a relatively short term. This is usually for such purposes as working capital for normal operating expenses. Interest on capital indebtedness is the cost incurred for funds borrowed for capital purposes, such as acquisition of facilities and equipment, and capital improvements. Generally, loans for capital purposes are long-term loans. [42 CFR 413.153(b)(1).]

Reimbursement Manual-15, § 202.1 provides the same definition of "interest," further characterizing "relatively short term" as "usually for 1 year or less." It also specifies that to be allowable, interest must be "[s]upported by evidence of an agreement that funds were borrowed and that payment of interest and repayment of funds are required."

The definition of working capital borrowings in § 8.8 as "funds borrowed for a relatively short period of time to meet normal operating expenses," is clearly consistent with the definition in 42 CFR 413.153(b)(1) of current indebtedness as "funds borrowed for a relatively short term . . . usually for such purposes as working capital for normal operating expenses." The requirement in § 8.8 that for interest to be allowable, the underlying loan must require repayment of the balance within a prescribed period interprets, but does not change, the requirement in Reimbursement Manual-15 § 202.1 that for interest to be allowable, the underlying loan must require payments of interest and repayment of the principal. Because the state plan incorporates 42 CFR 413.153 and Reimbursement Manual-15 § 202.1, with which § 8.8 of the Provider Manual is consistent, we conclude that § 8.8 does not change the state plan, and therefore does not require federal approval before enforcement.

Alternatively, petitioners argue that, even if § 8.8 is valid, it is ambiguous and must be construed against the Department. An ambiguity can be found only where the language of a statute as used in its particular context has more than one common and accepted meaning. *Colucci v McMillin*, 256 Mich App 88, 94; 662 NW2d 87 (2003). Because petitioners do not base their claim of ambiguity on the actual text of § 8.8, we find their argument unpersuasive.

Petitioners base their claim of ambiguity on two alleged admissions by the Department. They contend first that a statement by an appeals officer in a written conference report for Belle Fountain Nursing and Rehabilitation Center, asserting that what constitutes "regular" payments is ambiguous, establishes the ambiguity of the entire section. Assuming arguendo that the term "regular" is ambiguous, construing it against the Department would not help petitioners because the meaning of "regular" is not at issue. The promissory notes for Ciena actually require regular payments, but still run afoul of § 8.8 because they require interest-only payments. Accordingly, construing § 8.8 against the Department with respect to "regular" would not produce a different outcome for Ciena.

Petitioners next rely on a notice issued by the Department in conjunction with a 2012 proposed change in the wording of § 8.8 to specify that a relatively short time meant "12 months or less." As a rationale for the change in wording, the Department explained that the "[c]urrent policy does not clearly define the appropriate time period for repayment of the principal balance of a working capital loan." Petitioners contend that this is evidence that § 8.8 is ambiguous with regard to what constitutes a "relative short period." However, notwithstanding the rationale for revising the wording of § 8.8, the proposed change does no more than incorporate the characterization of "relatively short term" as "usually for 1 year or less" found in Reimbursement Manual-15 § 202.1, and in that part of the state plan that incorporates Reimbursement Manual-15 § 202.1, with which petitioners have taken no issue.

In sum, § 8.8 of the Provider Manual does not change the state plan; it corresponds to 42 CFR 413.153 and interprets Reimbursement Manual-15 § 202.1, both of which are incorporated into the state plan as guidelines for identifying allowable costs. Further, because petitioners have not pointed to any language in § 8.8 that, when "used in its particular context has more than one common and accepted meaning," there is no ambiguity. *Colucci*, 256 Mich App at 94. Consequently, § 8.8 of the Provider Manual is valid and enforceable, and the Department properly applied it to disallow the interest expense on loans that in most cases were at least two years old and required interest-only payments. For that reason, it is unnecessary for this Court to address whether the related party and the prudential buyer principles provided alternative bases for disallowing the interest expense.

Finally, petitioners claim that the circuit court deferred to the referee's findings of fact when it should have determined that those findings were based not on the whole record, but on portions of testimony taken out of context, and that they ignored or were contrary to the parties' stipulations. The portion of the record petitioners cite is the circuit court's articulation of the standard of review for administrative decisions found in *Quality Clinical Laboratories, Inc v Dep't of Social Services*, 141 Mich App 597, 599; 367 NW2d 390 (1985). Petitioners do not identify which of the more than 50 stipulations the referee, agency or court ignored or contradicted, and we will not search the record for citations to support their claim. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004). Because petitioners have abandoned this claim of error by failing to properly support it, we decline to address it. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

## III. CONCLUSION

We reverse the circuit court's order with regard to the eight NexCare facilities and remand this case to the circuit court to issue an order reversing the Department's final order with regard to the Durand facility alone. In all other respects we affirm.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Michael J. Kelly