BEVERLY A. REED, APPELLANT, V. STATE OF NEBRASKA
DEPARTMENT OF LABOR AND FERNANDO LECUONA III,
COMMISSIONER OF LABOR, APPELLEES.

717 N.W.2d 899

Filed July 14, 2006.    No. S-05-1473.

Riko E. Bishop, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellant.

John H. Albin, Thomas A. Ukinski, and W. Russell Barger for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Goodyear Tire and Rubber Company (Goodyear) laid off appellant, Beverly A. Reed, early in 2004. Reed was eligible to apply for trade readjustment allowance (TRA) benefits under 19 U.S.C. § 2291 (2000 & Supp. II 2002) of the Trade Act of 1974 (Trade Act), a federal unemployment benefits program administered by the states to assist workers who were laid off because of foreign trade competition. Nebraska Workforce Development (Workforce Development) failed to notify Reed of her rights and eligibility under the Trade Act as an "oversight." Reed missed the deadline to apply for TRA benefits, as interpreted by both the state and the federal Departments of Labor, and Workforce Development denied her benefits application as untimely.

Reed appealed the denial of benefits, arguing that the plain language of the statute does not support the state Department of Labor's interpretation of the deadline and that even if it does, Workforce Development is equitably estopped from enforcing the deadline against her. We affirm the district court's order that Reed's application was properly denied as untimely because Congress, when adopting the new deadlines, rejected the interpretation which Reed advocates.

## BACKGROUND

The facts are not disputed. Goodyear employed Reed from March 26, 1987, to January 31, 2004, when she was laid off. On

January 29, 2003, the U.S. Department of Labor certified that employees laid off from Goodyear on or after December 18, 2001, would be eligible to apply for benefits under the Trade Act.

The U.S. Secretary of Labor appoints individual state agencies to administer the TRA benefits program; in Nebraska, the Secretary of Labor designated Workforce Development as that state agency. Paul Elkins of Workforce Development conceded at the administrative hearing that Reed's separation from employment fell "within the certification parameters." Elkins also explained that the Trade Act affirmatively requires his office to send notification letters to those eligible for Trade Act benefits even when the employer does not provide a list of affected employees. Elkins conceded that Goodyear had notified Workforce Development of Reed's separation, but that Reed received no notice. Elkins described this as an oversight. He explained that his office copies and files every notification letter sent to eligible employees and confirmed that the Goodyear file lacked a copy of Reed's notification letter.

Reed also confirmed that Workforce Development never sent her information about her rights under the Trade Act. She explained that she had heard from other Goodyear employees that "we may be eligible for benefits," but that Goodyear's human resources employee told Reed during her initial meetings about unemployment benefits and that Workforce Development would contact her if she was eligible for other benefits. Reed stated that she did not question the lack of correspondence initially because she knew she had 1 year in which Goodyear could recall her. She also admitted she did not press Workforce Development about further benefits because she experienced a family crisis that occupied much of her time and because the unemployment benefits she received enabled her to cover expenses without worrying about her financial situation right away.

In September 2004, Reed's family crisis abated and finances became a concern. She had still not heard from Workforce Development about additional benefits, so she contacted Workforce Development on September 23. After meeting with a Workforce Development employee on October 1, the employee informed Reed that she would have been eligible for TRA benefits but that the deadline to apply had passed.

Reed filed a training approval request form, initiating the TRA benefits process. Nonetheless, Workforce Development denied Reed's application for training approval because she had not applied for benefits within the "8/16 week deadline." Elkins explained that under the Trade Act, applicants have 8 weeks after the certification date or 16 weeks after their separation date to apply for benefits. Elkins explained that the only remedy the office has when an employee is overlooked is a 45-day extension for extenuating circumstances, but that Reed first contacted his office in the fall of 2004, which exceeded even the extended deadline. Elkins informed Reed of the appeal process, and Reed initiated this appeal. Reed stated that had she been properly informed, she would have taken the steps to meet the deadlines.

## ASSIGNMENTS OF ERROR
Reed assigns that the district court erred when interpreting the Trade Act and erred by concluding that equitable estoppel did not apply in this case.

## STANDARD OF REVIEW
An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act. *Lancaster Cty. Sch. Dist. No. 0001 v. State*, 260 Neb. 108, 615 N.W.2d 441 (2000). Neb. Rev. Stat. § 84-917(5)(a) (Reissue 1999) provides that "[w]hen the petition instituting proceedings for review is filed in the district court on or after July 1, 1989, the review shall be conducted by the court without a jury de novo on the record of the agency . . . ." Under such circumstances, the court may affirm, reverse, or modify the decision of the agency or remand the cause for further proceedings. § 84-917(6)(b).

Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *White v. White*, 271 Neb. 43, 709 N.W.2d 325 (2006).

## ANALYSIS
This case presents the question whether Workforce Development could deny Reed the opportunity to apply for TRA

benefits for missing the training application deadline when the agency failed to inform her of her eligibility. The answer is shrouded in a fog of federal statutes and regulations.

Workforce Development and the state Department of Labor argue that 19 U.S.C. § 2291(a)(5)(A) provides explicit deadlines for applying for TRA benefits and that by failing to comply with those deadlines, Reed is ineligible for TRA benefits.

The Trade Act provides in relevant part:

### (a) Trade readjustment allowance conditions

Payment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification . . . *who files an application for such allowance for any week of unemployment which begins more than 60 days after the date on which the petition that resulted in such certification was filed* under section 2271 of this title, if the following conditions are met:

. . . .

*(5)* Such worker—

*(A)(i)* is enrolled in a training program approved by the Secretary under section 2296(a) of this title, *and*

*(ii)* the enrollment required under clause (i) occurs no later than the latest of—

(I) the last day of the 16th week after the worker's most recent total separation from adversely affected employment which meets the requirements of paragraphs (1) and (2),

(II) the last day of the 8th week after the week in which the Secretary issues a certification covering the worker,

(III) 45 days after the later of the dates specified in subclause (I) or (II), if the Secretary determines there are extenuating circumstances that justify an extension in the enrollment period, *or*

(IV) the last day of a period determined by the Secretary to be approved for enrollment after the termination of a waiver issued pursuant to subsection (c) of this section,

*(B)* has, after the date on which the worker became totally separated, or partially separated, from the adversely affected

employment, completed a training program approved by the Secretary under section 2296(a) of this title, *or*

*(C)* has received a written statement under subsection (c)(1) of this section after the date described in subparagraph (B).

(Emphasis supplied.) 19 U.S.C. § 2291. Subsections 2291(a)(5)(A)(ii)(I) and (II) are commonly referred to as the "8/16 week deadline." The state Department of Labor argues that the petition certifying Goodyear employees as eligible for TRA benefits occurred before Reed's actual layoff, so Reed had until the last day of the 16th week after her layoff, May 22, 2004, to enroll in training or request a training waiver. Further, the state Department of Labor argues that even with the additional 45-day extension for extenuating circumstances, Reed missed the deadline because the 45-day extension would only extend the deadline to July 6, 2004, whereas Reed did not initiate contact with Workforce Development until September 23, 2004 — 124 days after the 16-week deadline.

▮ The state Department of Labor relies on the assistant secretary for the U.S. Department of Labor Training and Employment Guidance Letter No. 11-02, change 1, 69 Fed. Reg. 60903 (Oct. 13, 2004), as support. The letter provides:

Section 114 of the 2002 amendments, which amended section 231(a)(5)(A) of the Trade Act, imposed a deadline by which a worker must be enrolled in approved training, or have a waiver of this requirement, in order to be eligible for TRA.

This deadline is either the last day of the 8th week after the week of issuance of the certification of eligibility covering the worker or the last day of the 16th week after the worker's most recent total qualifying separation, whichever is later (commonly referred to as the 8/16 week deadline). The "8/16 week deadline" applies to eligibility for all TRA, both basic and additional TRA. *If a worker fails to meet the applicable 8/16 week deadline, then the worker is not eligible for any TRA (basic TRA or additional TRA, including TRA for remedial training) under the relevant certification.*

(Emphasis supplied.) The state Department of Labor argues that letter No. 11-02 is entitled to substantial deference under *Auer v.*

*Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). See, also, *Chevron U. S. A. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Under this test, a court reviewing an agency's construction of a statute it administers confronts two questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U. S. A. v. Natural Res. Def. Council*, 467 U.S. at 842-43.

■ Reed, however, urges that *Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000), controls. In *Christensen*, the U.S. Supreme Court determined that *Chevron*-style deference does not apply to an agency's opinion letter. The Court distinguished opinion letters from regulations because opinion letters are not typically forged through "formal adjudication or notice-and-comment rulemaking." *Christensen v. Harris County*, 529 U.S. at 587. The Court further stated:

> Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. . . . Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in *Skidmore v. Swift & Co.*, 323 U. S. 134, 140 (1944), but only to the extent that those interpretations have the "power to persuade." . . .

(Citations omitted.) *Id.*

But we need not determine which level of deference to apply because Congress has "directly spoken to the precise question at

issue" by adopting the Trade Adjustment Assistance Reform Act of 2002 (2002 Trade Act). See *Chevron U. S. A. v. Natural Res. Def. Council*, 467 U.S. at 842. See, also, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002). When Congress has resolved a policy dispute in enacting a statute, an agency or court can, and must, adopt Congress' resolution. *Chevron U. S. A. v. Natural Res. Def. Council, supra.* See, also, I Richard J. Pierce, Jr., Administrative Law Treatise § 3.3 (4th ed. 2002). When Congress has spoken, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U. S. A. v. Natural Res. Def. Council*, 467 U.S. at 842-43.

## CONGRESSIONAL INTENT

Reed argues that when scrutinized, 19 U.S.C. § 2291 provides no deadline for securing training waivers. She points to the language of § 2291(a) as requiring that TRA applications be filed "no sooner than" 60 days after the certification petition is filed. Brief for appellant at 8. She argues that failure to specify a "no later than" deadline means that no such deadline exists. *Id.* Although inventive, Reed's argument loses its luster on further scrutiny.

Reed points us to federal regulations interpreting the Trade Act to bolster her claim. She argues that 20 C.F.R. § 617.10 (2005) provides the controlling time limit. It provides:

(a) *Before and after certification.* An individual covered under a certification or a petition for certification may apply to a State agency for TRA. A determination shall be made at any time to the extent necessary to establish or protect an individual's entitlement to TRA or other [trade adjustment assistance], but no payment of TRA or other [trade adjustment assistance] may be made by a State agency until a certification is made and the State agency determines that the individual is covered thereunder.

(b) *Timing of applications.* An initial application for TRA, and applications for TRA for weeks of unemployment beginning before the initial application for TRA is filed, may be filed within a *reasonable period of time* after publication of the determination certifying the appropriate group of workers under section 223 of the [Trade] Act.

However, an application for TRA for a week of unemployment beginning after the initial application is filed shall be filed within the time limit applicable to claims for regular compensation under the applicable State law. For purposes of this paragraph (b), *a reasonable period of time means such period of time as the individual had good cause for not filing earlier, which shall include, but not be limited to, the individual's lack of knowledge of the certification or misinformation supplied the individual by the State agency.*

(Emphasis supplied.) Reed argues that this language provides a relaxed deadline for workers, like her, seeking retroactive benefits—benefits for periods of unemployment that occurred before an eligible worker files his or her initial TRA application. As enticing as 20 C.F.R. § 617.10 seems, we cannot apply its terms.

The federal Department of Labor adopted 20 C.F.R. § 617.10 on December 22, 1986, and last updated § 617.10 in 1994. The state Department of Labor argues that the 8/16 deadline enacted through the 2002 Trade Act superseded conflicting regulations like § 617.10. We agree. In addition to the 8/16 deadline, Congress added the following language through its 2002 amendments:

**(b) Withholding of trade readjustment allowance pending beginning or resumption of participation in training program; period of applicability**

. . . .

*(2) The provisions of subsection (a)(5) of this section and paragraph (1) shall not apply with respect to any week of unemployment which begins—*

*(A)* after the date that is 60 days after the date on which the petition that results in the certification that covers the worker is filed under section 2271 of this title, and

*(B)* before the first week following the week in which such certification is made under subpart A of this part.

19 U.S.C. § 2291(b). In § 2291(b)(2), Congress excepted certain workers from the training requirements of § 2291(a)(5). But the enumerated exception in § 2291(b)(2) does not track with the retroactive/proactive distinction in 20 C.F.R. § 617.10. Instead, § 2291(b)(2) fails to mention the retroactive/proactive distinction recognized by the regulations.

■ When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. *United States v. Johnson*, 529 U.S. 53, 120 S. Ct. 1114, 146 L. Ed. 2d 39 (2000). The proper inference is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth. See *id.* We infer from the language of § 2291(b)(2) that Congress opted not to adopt the eligibility requirements as interpreted by the regulations. Further, legislative history for the 2002 Trade Act supports this reading.

A House of Representatives conference report describes the decisionmaking process of the Trade Act. The report notes that § 114 of the 2002 Trade Act, now codified at § 2291(a)(5), "establishes qualifying requirements that *must* be met in order for an individual worker within a certified group to receive Trade Adjustment Assistance." (Emphasis supplied.) H.R. Conf. Rep. No. 107-624, 107th Cong., 2d Sess. 123, *reprinted in* 2002 U.S. Code Cong. & Admin. News 653. Further, the report details the discrepancy between the approach preferred by the House of Representatives and that preferred by the Senate. The House favored "requirements and deadlines for workers to enroll in training," while the Senate maintained the eligibility requirements in "current law" but revised provisions for granting waivers. *Id.* Ultimately, the Senate yielded to the House, adopting the training enrollment deadline. The two houses considered and expressly rejected the eligibility approach embodied in the regulations.

■ The courts will not apply an administrative construction that has been prohibited by subsequent legislative enactments of the same nature. See, *United States v. Gilmore*, 75 U.S. (8 Wall.) 330, 19 L. Ed. 396 (1869); 2 Am. Jur. 2d *Administrative Law* § 81 (2004). See, generally, *In re Invol. Dissolution of Battle Creek State Bank*, 254 Neb. 120, 575 N.W.2d 356 (1998) (stating legislative act which is complete in itself and is repugnant to or in conflict with prior law repeals prior law by implication to extent of repugnancy or conflict.)

Because Congress considered the issue of exceptions to its training requirement and explicitly rejected the approach embraced by the regulations, we, too, must reject that approach and adhere strictly to the language of the statute. While the regulatory

approach seems more equitable, we are bound by Congress' words and intent. Thus, we reluctantly affirm the district court's conclusion that Workforce Development properly denied Reed's application as untimely.

## EQUITABLE ESTOPPEL

We next consider Reed's equitable estoppel argument. Reed concedes that 20 C.F.R. § 617.50(d) (2005) bars using state law or regulations to circumvent TRA time limits, but argues that the "reasonable period of time" language in 20 C.F.R. § 617.10 allows equitable estoppel review. Section 617.50 provides:

> [N]o provision of State law or regulations on good cause for waiver of any time limit, or for late filing of any claim, shall apply to any time limitation referred to or specified in this part 617, *unless such State law or regulation is made applicable by a specific provision of this part 617.*

(Emphasis supplied.)

■ Reed argues that the good cause exception in § 617.10 implies equitable principles and allows equitable estoppel analysis. But as previously discussed, the mandatory deadlines of the 2002 Trade Act effectively supersede 20 C.F.R. § 617.10. Similarly, we can find no other provision of § 617 that allows application of state law on this topic. Thus, the 2002 Trade Act and remaining regulations forbid state action on this point. See *Lowe v. Unemployment Compensation Bd.*, 877 A.2d 494 (Pa. Commw. 2005). We affirm the district court's conclusion that equitable estoppel does not apply.

## CONCLUSION

Because Congress amended the Trade Act by adopting qualifying deadlines, we conclude that the statute does not allow for a good cause exception in either state or federal law. For these reasons, we reluctantly affirm the district court's conclusion that Workforce Development properly denied Reed's application as untimely.

AFFIRMED.

WRIGHT, J., participating on briefs.