**Marsha HALL, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 10, 2012.

Decided April 23, 2012.

---

Marsha A. Hall, pro se.

Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Marsha Hall (Claimant), representing herself, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that denied her claim for Trade Readjustment Assistance (TRA) benefits for failing to comply with the program's deadlines under Section 231 of the Trade Act of 1974 (Trade Act), 19 U.S.C. § 2291. Claimant contends she is entitled to TRA benefits because her failure to meet the Trade Act's enrollment deadlines was caused by an administrative breakdown within her local Pennsylvania CareerLink (CareerLink) office and the Department of Labor & Industry (Department). Upon review, we vacate and remand.

Prior to her separation from employment in 2009, Claimant worked for Hydro Carbide Inc. While collecting state unemployment benefits, the Department notified Claimant of her potential eligibility for additional benefits under the TRA program.[1] Shortly thereafter, Claimant received and signed a certification indicating she understood the TRA benefits program and its enrollment deadlines. Specifically, Claimant knew she was required to either enroll in approved training or receive a written waiver of that requirement by July 2010. Subsequently, Claimant met with advisors from the local CareerLink office to complete her TRA benefits paperwork. However, Claimant did not timely enroll in a training program or receive a waiver. Rather, in the fall, after her July deadline, Claimant enrolled at a community college for approved training in business management.

In February 2011, Claimant's unemployment benefits ended, and her supplemental

---

1. The Trade Act established several federal programs to provide benefits to American workers adversely affected by foreign imports. See 19 U.S.C. §§ 2101–2487. One program under the Trade Act is the Trade Readjustment Assistance (TRA) benefits program, which in part pays cash benefits for costs associated with training, job searches, and relocation so displaced workers can quickly return to the workforce. 20 C.F.R. § 617.3. The TRA benefits program is administered through the cooperation of the state agencies responsible for the administration of their state's unemployment compensation system and the United States Department of Labor (DOL). *McQuown v. Unemployment Comp.* *Bd. of Review,* 834 A.2d 692 (Pa.Cmwlth. 2003).

Under the program, upon application from an unemployed worker, DOL must first certify a group of workers as eligible for TRA benefits on the basis that their former employer was adversely affected by foreign competition. 19 U.S.C. § 2271. If DOL certifies an employee-group, the individual unemployed workers may then apply and qualify for cash benefits in conjunction with a state's unemployment compensation system. 19 U.S.C. § 2291. As such, although TRA benefits are federally funded, the program is administered locally by the Board. 19 U.S.C. §§ 2311, 2313.

TRA benefits did not begin as she expected. At this time, Claimant learned that she had not received a waiver of her prior July deadline, which would allow her to wait until the fall to enroll in approved training, and that her TRA benefits were never authorized. Claimant filed an appeal claiming entitlement to TRA payments.

Before a referee, Claimant testified on her own behalf, and the Department presented the testimony of two witnesses from the local service center and CareerLink office. Claimant's previous employer did not provide any testimony.

Claimant testified that between February and August 2010 she attended several meetings with CareerLink counselors to establish her entitlement to TRA benefits. Notes of Testimony (N.T.), 4/27/11, at 8–9. Specifically, upon learning she was included in a group certified as eligible for TRA benefits, Claimant attended a February benefits meeting to learn about the program. Thereafter, Claimant initiated the process to receive TRA benefits, and researched the approved training courses. *Id.* at 8. Upon doing her own research, Claimant learned that summer classes were limited in number and that she would likely need to wait until the fall to enroll. *Id.*

Claimant further testified that in April she met with CareerLink counselor Hope Norton (Norton) to discuss her difficulty enrolling in summer classes. *Id.* At that time, Claimant requested a waiver of her TRA deadline so she could wait to enroll in approved community college classes for the fall semester. *Id.* at 12. Importantly, Norton assured Claimant that she would "take care of" her paperwork. Referee's Dec., 5/5/2011, Finding of Fact (F.F.) No. 3. Thereafter, Norton scheduled a community college entrance exam for Claimant, and she told Claimant to come back to the CareerLink office to fill out a contract

when she made her final decision on class selection. N.T. at 8, 12.

Then, in August, Claimant returned to the CareerLink office and informed a counselor that she selected her classes and intended to study Business Administration. *Id.* at 9. Thereafter, a CareerLink counselor helped her fill out the necessary paperwork. *Id.* At that time, believing she received the proper waiver, Claimant enrolled at the community college for the fall semester, which began after her July TRA deadline. *Id.* at 11.

Throughout the fall semester, Claimant continued to receive her state unemployment compensation benefits. However, in December, Claimant contacted the local service center to inquire as to when she would receive her TRA benefits, and whether she needed to do anything to begin receiving those funds. *Id.* at 9. The TRA representative told Claimant her benefits would automatically begin after her other benefits were exhausted, and that she did not need to do anything more to receive them. *Id.* Subsequently, in March 2011, Claimant learned for the first time that a waiver of her enrollment date had not been issued, and she was not entitled to receive TRA benefits. *Id.*

Of significance, the Department's witness from CareerLink, Lorri Douglass (Douglass), corroborated Claimant account and testified that "[a]ll of the information that [Claimant] said is correct according to our record." *Id.* at 12–13. Douglass further testified the local CareerLink office recently underwent substantial downsizing. *Id.* Specifically, Douglass explained that Norton, Claimant's original counselor, retired in June 2010, and that her files were still in the process of being transferred. *Id.* To that end, Douglass could not explain what happened to Claimant's file or her application for a waiver. *Id.* at 13.

However, the Department's other witness, Tracy Marcus (Marcus), testified that

despite Claimant's representations the onus was on Claimant to vigilantly meet the TRA program's deadlines. *Id.* at 13–14. To that end, Marcus testified Claimant did not enroll in approved training by July 2010 or receive a waiver of that deadline; therefore, she was ineligible for TRA benefits. *Id.* at 7, 10–11, 13–14. Furthermore, Marcus explained it was the Department's view, pursuant to *Lowe v. Unemployment Compensation Board of Review,* 877 A.2d 494 (Pa.Cmwlth.2005), that a claimant is not permitted to untimely enroll or apply for a waiver under the Trade Act even when the claimant relied on negligent or misleading advice from Career-Link representatives. N.T. at 4, 13–14.

■ Upon consideration, the referee determined because Claimant did not meet the deadlines imposed by the Trade Act, and *nunc pro tunc,*[2] or "now for then," relief was not available under *Lowe,* Claimant was ineligible for TRA benefits. Claimant appealed, and the Board affirmed, adopting the referee's findings and conclusions. Claimant petitions for review.

On appeal,[3] Claimant asks whether the Board erred in determining she was not entitled to TRA benefits for failing to comply with the deadlines imposed by the Trade Act, where an administrative breakdown caused her noncompliance.

Pursuant to the TRA benefits scheme, individual claimants who are members of a U.S. Department of Labor (DOL) certified group must individually meet the Trade Act's qualification requirements and deadlines. *Lowe; Mosqueda v. Unemployment Comp. Bd. of Review,* 60 Pa.Cmwlth. 242, 431 A.2d 371 (1981). Under Section 231 of the Trade Act, an individual is eligible for TRA payments if: (1) he enrolls in a training program within the later of eight weeks from DOL's certification of the claimant's employee-group, or 16 weeks after his separation from work (commonly called the 8/16 deadline); (2) completes the training program; or, (3) obtains a waiver (i.e. an extension) of the deadline for enrollment.[4]

Previously, in *Lowe,* this Court considered whether a claimant was eligible for

**2.** *Nunc pro tunc,* a Latin phrase meaning "now for then," denotes an order "[h]aving retroactive legal effect through a court's inherent power." *Black's Law Dictionary* 1174 (9th ed.2009). "When an order is signed 'nunc pro tunc' … it means that a thing is now done which should have been done [as of an earlier] date." *Id.* (citing 35A C.J.S. *Federal Civil Procedure* § 370 (1960)).

**3.** Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Oliver v. Unemployment Comp. Bd. of Review,* 5 A.3d 432 (Pa.Cmwlth.2010) (en banc).

**4.** In pertinent part, Section 231 of the Trade Act states:

Qualifying requirements for workers
(a) Trade readjustment allowance conditions

Payment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification under subpart A of this part who files an application for such allowance for any week of unemployment which begins on or after the date of such certification, if the following conditions are met:

\* \* \*

(5) Such worker—
(A)
(i) is enrolled in a training program approved by the Secretary under section 2296(a) of this title, and
(ii) the enrollment required under clause (i) occurs no later than the latest of—
[Defining the 8/16 deadline]
(B) has, after the date on which the worker became totally separated, or partially separated, from the adversely affected employment, completed a training program approved by the Secretary under section 2296(a) of this title, or

TRA benefits after failing to comply with the Trade Act's enrollment deadlines as a result of unclear and confusing direction from CareerLink representatives. In that appeal, the claimant argued the negligent guidance amounted to an administrative breakdown meriting *nunc pro tunc*, or "now for then," relief. In response, the Board argued that pursuant to DOL regulations, the Trade Act's deadlines are not subject to equitable remedies or defenses and must be strictly applied.

Upon review, this Court determined the Trade Act was ambiguous as to the applicability of equitable relief from the program's deadlines, relied on DOL regulation 20 C.F.R. § 617.50 [5] for guidance. In so doing, we denied benefits and reached the harsh conclusion that "[e]ven though [the c]laimant may have been confused or even negligently misled, which may merit *nunc pro tunc* relief in an unemployment

compensation context, such circumstances may not be relied upon to extend the specified time limits in the Trade Act." *Id.* at 498 (citing 20 C.F.R. § 617.50(d); *Sturni v. Unemployment Comp. Bd. of Review*, 155 Pa.Cmwlth. 501, 625 A.2d 727 (1993); *Ford v. Unemployment Comp. Bd. of Review*, 48 Pa.Cmwlth. 580, 409 A.2d 1209 (1980)).

Since our decision in *Lowe*, however, a significant change of law occurred which was not addressed by the unemployment compensation authorities: the Trade Act was amended by the American Recovery and Reinvestment Act of 2009 (Recovery Act). As part of the omnibus stimulus bill, the Trade Act was amended to permit the application of state law waiver doctrines to the TRA program's enrollment deadlines. Specifically, Section 234(b) of the Trade Act [6] as amended by the Recovery Act states:

---

(C) has received a written statement under subsection (c)(1) of this section after the date described in subparagraph (B).

\* \* \*

(c) Waivers of training requirements

(1) Issuance of waivers

The Secretary may issue a written statement to an adversely affected worker waiving the requirement to be enrolled in training described in subsection (a)(5)(A) of this section if the Secretary determines that it is not feasible or appropriate for the worker, because of 1 or more of the following reasons:

(A) Health. The worker is unable to participate in training due to the health of the worker....

(B) Enrollment unavailable. The first available enrollment date for the approved training of the worker is within 60 days after the date of the determination made under this paragraph, or, if later, there are extenuating circumstances for the delay in enrollment, as determined pursuant to guidelines issued by the Secretary.

(C) Training not available. Training approved by the Secretary is not reasonably available to the worker from either governmental agencies or private sources ...

no training that is suitable for the worker is available at a reasonable cost, or no training funds are available.

**5.** 20 C.F.R. § 617.50(d) provides:

(d) Use of State law. In making determinations or redeterminations under this section, or in reviewing such determinations or redeterminations under § 617.51, a State agency shall apply the regulations in this part 617. As to matters committed by this part 617 to the applicable State law, a State agency, a hearing officer, or a State court shall apply the applicable State law and regulations thereunder, including procedural requirements of such State law or regulations, except so far as such State law or regulations are inconsistent with this part 617 or the purpose of this part 617: *Provided, that, no provision of State law or regulations on good cause for waiver of any time limit, or for late filing of any claim, shall apply to any time limitation referred to or specified in this part 617*, unless such State law or regulation is made applicable by a specific provision of this part 617. (Emphasis added).

**6.** Act of February 17, 2009, Pub.L. 111–5, Div. B, Title I: "Trade and Globalization Ad-

(b) Special Rule With Respect to State Laws and Regulations on Good Cause for Waiver of Time Limits or Late Filing of Claims.

Any law, regulation, policy, or practice of a cooperating State that allows for a waiver for good cause of any time limitation relating to the administration of the State unemployment insurance law shall, in the administration of the program under this chapter by the State, apply to any time limitation with respect to an application for a trade readjustment allowance or enrollment in training under this chapter.

To aid the individual states in implementing the Recovery Act, DOL issued a detailed 139–page guidance letter offering its interpretations of the amendments. In the letter, DOL explained in pertinent part:

C.7 Use of State Law Good Cause Provisions

* * *

Administration: New section 234(b) supersedes 20 CFR 617.50(d), ... Accordingly, [cooperating state agencies] will apply state [unemployment compensation] "good cause" waiver provisions (laws, policies, or practices) to all time limitations governing TRA and enrollment in training.

Department of Labor, Training and Employment Guidance Letter No. 22–08, 5/15/09, at A–29, *available at* http://wdr. doleta.gov/directives/attach/teg1/TEGL22–08.pdf.

Here, DOL certified Claimant as a member of a group eligible for TRA benefits under a petition filed on May 19, 2009. F.F. No. 1. The Recovery Act amendments to the Trade Act apply to petitions filed between May 18, 2009 and February 12, 2011. 19 U.S.C. § 2294. Therefore, Claimant's entitlement to TRA benefits probably needs to be considered under the Trade Act as amended at that time.

▇ Accordingly, we vacate and remand for further Board proceedings to determine in the first instance the impact of the Recovery Act amendments to the Trade Act and, if appropriate, whether Claimant is eligible for *nunc pro tunc*, or "now for then," relief under Section 234(b) of the Trade Act.

### ORDER

**AND NOW,** this 23rd day of April, 2012, the order of the Unemployment Compensation Board of Review is **VACATED,** and the above captioned case is **REMANDED** to the Unemployment Compensation Board of Review for proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

CONCURRING OPINION BY Judge COHN JUBELIRER.

I agree with the Majority's well-reasoned opinion reversing the Order of the Unemployment Compensation Board of Review and remanding this matter to determine whether Marsha Hall is entitled to

---

justment Assistance Act of 2009," § 1825, *as amended* 19 U.S.C. § 2294. Prior to the 2009 amendments, Section 234 did not address whether state law was applicable to the timeliness of claims or whether equitable relief was available. Rather, Section 234 of the Trade Act only applied state substantive law to the initial determination of unemployment benefits eligibility, but was ambiguous about the effects of state law to an untimely filing. *See* Act of January 3, 1975, Pub.L. 93–618,

Title II, § 234. Therefore, as in *Lowe*, courts relied on 20 C.F.R. § 617.50(d) to clear the ambiguity left by Congress's language. *See Schultz v. Div. of Employment Sec.*, 293 S.W.3d 454 (Mo.Ct.App.2008); *Reed v. Neb. Dep't of Labor*, 272 Neb. 8, 717 N.W.2d 899 (2006) *cf. Dep't of Labor & Econ. Growth v. Dykstra*, 283 Mich.App. 212, 771 N.W.2d 423 (2009) (no ambiguity in the Trade Act to necessitate reliance on DOL guidance).

*nunc pro tunc* relief. I write separately to express my belief that using the phrase "now for then," even when used in conjunction with the term *nunc pro tunc,* which is consistently and traditionally used in our case law, will create confusion among litigants. In particular, I do not see how using this term, although it is English rather than Latin, will help pro se litigants, who do not know the law or understand why they did not prevail before the lower tribunal or this Court. The phrase "now for then" does not explain the legal concept of *nunc pro tunc* relief, or the requirements for obtaining such relief, to a layperson any better than the use of the phrase "*nunc pro tunc.*"