# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard A. Spradlin,                             :
                          Petitioner             :
                                                 :
          v.                                     :
                                                 :
Unemployment Compensation                        :
Board of Review,                                 :
                          Respondent             :   No. 159 C.D. 2019
                                                 :
Richard A. Spradlin,                             :
                          Petitioner             :
                                                 :
          v.                                     :
                                                 :
Unemployment Compensation                        :
Board of Review,                                 :   No. 160 C.D. 2019
                          Respondent             :   Submitted: July 26, 2019


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED:  August 16, 2019


        Richard A. Spradlin (Claimant) petitions this Court, pro se, for review of
the Unemployment Compensation (UC) Board of Review's (UCBR) December 19,
2018 orders reversing the Referee's decisions, thereby denying him additional Trade
Readjustment Allowance (TRA) benefits for claim weeks ending March 17, March 24
and March 31, 2018, and ordering him to repay a $573.00 non-fraud overpayment.
Claimant presents one issue for this Court's review: whether the UCBR erred by

concluding that Claimant was enrolled in training part-time during the claim weeks ending March 17, March 24 and March 31, 2018.

Claimant had been employed by Hyundai Rotem. Claimant applied for and received UC benefits from October 16, 2016 through April 22, 2017. In June 2017, Claimant was approved to receive Trade Adjustment Assistance (TAA) pursuant to Section 236 of the Trade Act of 1974 (Trade Act),[1] 19 U.S.C. § 2296, to attend an advanced information technology program at Delaware County Community College – Media (DCCC) from September 2017 to August 2019. *See* Certified Record (C.R.) Item 3 (Approval of Request by Worker for Training Approval and Allowances While in Training). The Department of Labor and Industry's (Department) TRA Claim File Inquiry Record reflects that Claimant had been receiving $573.00 weekly TRA payments since the claim week ending June 17, 2017. C.R. Item 1 (Claim Records) at 12-15.

On March 22, 2018, Claimant submitted a TRA Benefits Claim Form to the Department's UC Service Center (UC Service Center) for weeks ending March 10 and March 17, 2018, and was approved and paid $573.00 for each of those weeks. *See*

---

[1] Act of January 3, 1975, P.L. 93-618, 19 U.S.C. §§ 2101-2479b, *as amended* by the Trade Adjustment Assistance Reauthorization Act of 2015, Act of June 29, 2015, P.L. 114-27, 19 U.S.C. §§ 2271-2323.

> The Trade Act established several federal programs to provide benefits to American workers adversely affected by foreign imports. One program under the Trade Act is the [TRA] program, which in part pays cash benefits for costs associated with training, job searches, and relocation so displaced workers can quickly return to the workforce. The TRA benefits program is administered through the cooperation of the state agencies responsible for the administration of their state's [UC] system and the United States Department of Labor [].

*Hall v. Unemployment Comp. Bd. of Review*, 42 A.3d 1204, 1205 n.1 (Pa. Cmwlth. 2012) (citations omitted). A "[c]laimant is entitled to additional TRA benefits for the period that follows the last week of entitlement to basic TRA." *Wilkinson v. Unemployment Comp. Bd. of Review*, 688 A.2d 1243, 1245 (Pa. Cmwlth. 1997).

C.R. Item 2 (TRA Benefits Claim Forms) at 1-2. On March 30, 2018, Claimant submitted a TRA Benefits Claim Form to the UC Service Center seeking additional TRA benefits for weeks ending March 24 and March 31, 2018. *See* C.R. Item 2 (TRA Benefits Claim Forms) at 3-4. On April 3, 2018, the UC Service Center denied Claimant TRA benefits for the week ending March 17, 2018 because he was "not participating in training that [was] full[-]time during the week[] claimed[,]" pursuant to Sections 233(a)(3) and 236(g) of the Trade Act.[2] C.R. Item 7 (Notices of Determination) at 4. Also on April 3, 2018, the UC Service Center issued Claimant a notice of non-fraud overpayment for the $573.00 he received for the week ending March 17, 2018. *See* C.R. Item 7 (Notice of Determination) at 1. On April 4, 2018, the UC Service Center denied Claimant TRA benefits for the weeks ending March 24 and 31, 2018 because he was "not participating in training that [was] full[-]time during the week(s) claimed[,]" pursuant to Sections 233(a)(3) and 236(h) of the Trade Act. C.R. Item 7 (Notices of Determination) at 6.

On April 11, 2018, Claimant appealed from the UC Service Center's April 3 and 4, 2018 determinations, and a Referee hearing was held on June 14, 2018.[3] On June 21, 2018, the Referee reversed the UC Service Center's April 3, 2018 determination, concluding that Claimant was entitled to TRA benefits for the claim week ending March 17, 2018 and, since Claimant was entitled to the TRA benefits, there was no overpayment. *See* C.R. Item 13 (Referee's Decision, Appeal No. 2092). The Referee also reversed the UC Service Center's April 4, 2018 determination, concluding that Claimant was entitled to TRA benefits for the weeks ending March 24

---

[2] 19 U.S.C. §§ 2293(a)(3) (relating to TRA limitations), 2296(h) (redesignated as 2296(g), related to training).

[3] The Department designated Claimant's appeal from the UC Service Center's April 3, 2018 TRA denial and overpayment notices Appeal No. TRA-18-09-H-**2092**, and Claimant's appeal from the April 4, 2018 TRA denial Appeal No. TRA-18-09-H-**2097**. The matters were consolidated for hearing purposes.

and 31, 2018. *See* C.R. Item 13 (Referee's Decision, Appeal No. 2097). The Department appealed from each Referee decision to the UCBR. On December 19, 2018, the UCBR reversed the Referee's decisions, holding that Claimant was not entitled to TRA benefits and he had to repay the $573.00 overpayment for the week ending March 17, 2018. Claimant appealed from each UCBR order to this Court.[4]

Attached to Claimant's petitions for review to this Court were copies of a January 4, 2019 letter from DCCC confirming Claimant's full-time training enrollment status for the subject claim weeks. On April 3, 2019, the Department filed Motions to Strike Extra-Record Evidence (Motions) in each appeal. By April 29, 2019 order, this Court directed that the Motions be considered with the merits of Claimant's appeals.

Claimant argues that the UCBR erred by concluding that he was a part-time student during the claim weeks ending March 17, March 24 and March 31, 2018 and, thus, ineligible for TRA benefits. Claimant specifically asserts that he was a full-time student at DCCC and, therefore, entitled to TRA benefits for those weeks.

Initially, Section 231 of the Trade Act authorizes TAA to be paid to adversely affected workers who are "enrolled in a training program approved by the Secretary of Labor (Secretary) under Section 236(a) of the [Trade Act[5]] . . . ." 19 U.S.C. § 2291(a)(5). Section 236(a) of the Trade Act states that, if an adversely affected worker qualifies, "the Secretary shall approve [] training for the worker. Upon such approval, the worker shall be entitled to have payment of the costs of such training

---

[4] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

Claimant appealed from UCBR Decision Appeal No. 2092 to this Court at 159 C.D. 2019, and from UCBR Decision Appeal No. 2097 at 160 C.D. 2019. On March 19, 2019, this Court consolidated Claimant's appeals.

[5] 19 U.S.C. § 2296(a).

4

(subject to the limitations imposed . . . ) paid on the worker's behalf by the Secretary directly or through a voucher system." 19 U.S.C. § 2296(a). Section 236(g)(1) of the Trade Act provides that "[t]he Secretary may approve full-time or part-time training for an adversely affected worker under [Section 236(a) of the Trade Act]." 19 U.S.C. § 2296(g)(1). However, although TAA may be paid for full or part-time training, Section 236(g)(2) of the Trade Act clarifies that "a worker participating in part-time training approved under [Section 236(a) of the Trade Act] may not receive a [TRA] under [Section 231 of the Trade Act]." 19 U.S.C. § 2296(g)(2). Accordingly, a TAA-eligible worker must be training full-time in order to qualify for TRA.

Here, the parties do not dispute that Claimant is an adversely affected worker approved by the Secretary for TAA. The only issue is whether Claimant was enrolled full-time in training at DCCC during the weeks ending March 17, 24 and 31, 2018 and, thus, was eligible for TRA benefits during those three weeks.

At the hearing, the Department offered Claimant's Weekly Request for Allowances by Worker in Training form submitted to the UC Service Center on or about March 26, 2018 by DCCC Training Official Robert Wrease (Wrease), seeking Claimant's subsistence allowance for the March 18 to March 24, 2018 training week. *See* C.R. Item 4 at 1-2. The Department also offered into evidence Claimant's Weekly Request for Allowances by Worker in Training form signed and submitted by Wrease to the UC Service Center on or about April 2, 2018, seeking subsistence allowance for the March 25 to March 31, 2018 training week. *See* C.R. Item 4 at 3-4. In addition, the Department offered a progress note created by the CareerLink Workforce Development Staff on March 13, 2018 that reflected:

> Email sent to the [UC Service Center] from [Wrease] stating that on [March 12, 2018], [Claimant] informed [DCCC], that due to medical reasons he has to drop the upcoming Cisco Certification Course. The change will put him at part-time

5

enrollment status and might require an extension of his program and date ([August 22, 2019]).

C.R. Item 5 (Case Progress Note) at 1.

UC Service Center representative Debra Botti (Botti) testified for the Department that Claimant was enrolled in training only part-time, as evidenced by the Department's CareerLink Trade Attendance form, which reflects under the heading "Participation and Attendance in Training" that "[t]his attendance form was submitted for a part-time training approval." C.R. Item 5 (Trade Attendance Form) at 2-3; *see also* C.R. Item 12 (Notes of Testimony, June 14, 2018 (N.T.)) at 18-19. Botti also noted that the "Part-Time" box was marked on Claimant's TAA approval form. C.R. Item 3 (Request by Worker for Training Approval and Allowances While in Training) at 1; *see also* N.T. at 19. Botti explained:

> R[eferee] Okay. So then if he was approved part[-]time training why would [Claimant] dropping th[e Cisco] class have resulted in a denial of benefits?
>
> [Botti] Well, I'm not sure if he should have been (inaudible) additional paperwork. He might have not been eligible for any of the weeks if he was in part[-]time training.
>
> R[eferee] Well, you issued decisions related to specific weeks, so [how] was that done if he was approved for part[-]time training according to that document?
>
> [Botti] Because when he submitted it for that week when we pulled up the case notes for that particular week that (inaudible) he was dropping that course and changing to part[-]time status at that particular week, that's what we haven't supplied for the week that we had to verify at that time.

N.T. at 19-20.

Claimant testified that he was enrolled in and attended classes 20 hours per week, which is considered full-time at DCCC, during the weeks ending March 17, March 24 and March 31, 2018. *See* N.T. at 8-9, 13-14. He further admitted that he

6

received $573.00 in TRA benefits for the week ending March 17, 2018. *See* N.T. at 9. Claimant described that the Weekly Request for Allowances by Worker in Training forms seeking subsistence allowance for the weeks ending March 24 and 31, 2018 contain Wrease's verification that Claimant attended all four of the scheduled class days for those weeks. *See* C.R. Item 4 (Weekly Request for Allowances by Worker in Training).

Relative to the March 13, 2018 notation on the Case Progress Note, Claimant explained that his Cisco class was to begin on March 13, 2018 but, due to the timing of his ongoing CompTIA A+ class, and a medical procedure he underwent, he had to drop the Cisco class, but he replaced it with Outlook and Excel classes during the week ending March 17, 2018. *See* N.T. at 10, 15-16, 18. Therefore, Claimant was enrolled in three DCCC classes during the week ending March 17, 2018. Claimant introduced a June 6, 2018 letter, wherein **Wrease declared: "[Claimant] has been enrolled as a full-time student at [DCCC] since September 2017**. During the weeks 3/17/18 to 3/31/18 he was in the CompTIA A+ Certification Program along with Introduction to Microsoft Outlook and Introduction to Microsoft Excel classes." N.T. Claimant Ex. 1 at 1 (emphasis added).

Claimant also introduced emails dated April 11, 2018 regarding his training status. *See* N.T. at 17. Specifically, on April 11, 2018 at 10:49 a.m., the Department's CareerLink specialist emailed the Department's Trade Division (and copied Wrease), stating:

> [Claimant] had to drop the Cisco Certification [c]ourse he was previously registered for because he was required to begin emergency medical treatment the day his classes began. He was informed by DCCC that he can register for the Administrative Professional (MOS Certificate) course which begins April 23, which will put him back at full[-]time status.

7

Do you need the school to provide this information in writing?

N.T. Claimant Ex. 3 at 2. At 11:09 a.m. that same day, the Department's Trade Division responded: "**Changed back to full**[-]**time**." N.T. Claimant Ex. 3 at 1 (emphasis added). Then, at 12:33 p.m., DCCC notified Claimant: "See the attached below. I'll send your schedule shortly." N.T. Claimant Ex. 3 at 1. Claimant confirmed that the Department eventually "reinstated [him] to full[-]time status[.]" N.T. at 13.[6]

Based upon the evidence, **the Referee** found relative to Appeal Nos. 2092 and 2097 that "[C]laimant was enrolled in [DCCC] part[-]time during the week[s] at issue[,]" Referee Decision, Appeal No. 2092 at 2; Referee Decision, Appeal No. 2097 at 2, but **concluded that Claimant was** nevertheless **entitled to TRA benefits**. *See* Referee Decision, Appeal No. 2092 at 3; Referee Decision, Appeal No. 2097 at 3.

This Court has explained:

> [T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted)). Further,

---

[6] Claimant's January 4, 2019 letter from DCCC explaining his training enrollment status was not part of the record before the UCBR. "This Court may not consider any evidence that is not part of the certified record on appeal." *Pa. Tpk. Comm'n v. Unemployment Comp. Bd. of Review*, 991 A.2d 971, 974 (Pa. Cmwlth. 2009). Accordingly, we are constrained to grant the Department's Motions and strike the January 4, 2019 letter as extra-record evidence.

> [s]ubstantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sipps*, 181 A.3d at 484 (quoting *Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)).

Here, the UCBR agreed with the Referee that the evidence supported a finding that Claimant's training was part-time during the claim weeks ending March 17, March 24 and March 31, 2018. *See* UCBR Decision, Appeal No. 2092 at 1; UCBR Decision, Appeal No. 2097 at 1. However, the UCBR concluded relative to both appeals that "[f]or the period at issue, [Claimant] was enrolled in part-time training, which is entitled to be covered by TAA, but does not entitle him to TRA benefits. . . ." *See* UCBR Decision, Appeal No. 2092 at 2; UCBR Decision, Appeal No. 2097 at 1. Regarding Appeal No. 2092, the UCBR added: "[Claimant] received $573.00 in TRA benefits to which he was not entitled, so an overpayment exists." UCBR Decision, Appeal No. 2092 at 2.

This Court will now review the record evidence, to determine whether, in fact, the UCBR's findings are supported by substantial evidence. First, the Department's TRA Claim File Inquiry Record reflects that Claimant had been receiving weekly $573.00 TRA payments since the claim week ending June 17, 2017. C.R. Item 1 (Claim Records) at 12-15 (Department Ex. 10). The Department's March 22, 2018 approval letter specifically stated: "I am writing to inform [you] that your application for training or Completion TRA at [DCCC] . . . has been approved."[7] C.R.

---

[7] It is not clear from the record why this letter was dated as late as March 22, 2018 in response to Claimant's April 9, 2017 TRA application. Nevertheless, that letter approved Claimant's TRA for the weeks ending March 24 and 31, 2018.

Item 3 at 1.  Claimant's April 9, 2017 Request by Worker for Training Approval and Allowances form reveals that although the Department purportedly marked the "Part-Time" box in the "For Office Use Only" portion of the form, the Department failed to complete the remaining portions thereof (*i.e.*, TAA type, certification date and signature).  *See* C.R. Item 3 (Request by Worker for Training Approval and Allowances While in Training) at 1.  Further, notwithstanding that the Trade Attendance Form denotes that it "was submitted for a part-time training approval," the daily attendance portion of that document, directly below that language clearly shows that Claimant attended the four scheduled training class days.  C.R. Item 5 (Trade Attendance Form) at 2.  Moreover, Botti could not explain why the Department was concerned with the March 13, 2018 notation alerting that Claimant dropped the Cisco class and would therefore be enrolled only part-time, if that was already his status.

Claimant testified that he was enrolled full-time at DCCC from the time he began the training program in September 2017 and, although he dropped the Cisco class during the week ending March 17, 2018, he added other classes that same week in order to maintain his full-time status.  Despite that the Department's March 13, 2018 Case Progress Note reflected that dropping the Cisco class "will put [Claimant] at part-time enrollment status," C.R. Item 5 (Case Progress Note) at 1, the uncontradicted record evidence supports that Claimant added his Outlook and Excel classes that same week to maintain his full-time status.  In addition, Wrease's June 6, 2018 letter confirmed Claimant's testimony that he was enrolled in three classes and was "a full-time student at [DCCC]" during the claim weeks ending March 17, 24 and 31, 2018.  *See* N.T. Claimant Ex. 1 at 1.  Wrease also verified on Claimant's Weekly Request for Allowances by Worker in Training forms for the weeks ending March 24 and 31, 2018 that Claimant attended all four of the scheduled days for his three training classes

during those weeks. *See* C.R. Item 4 (Weekly Request for Allowances by Worker in Training).

Although it may have appeared for a brief moment on March 13, 2018 that Claimant's DCCC enrollment status might have dipped to part-time, there is no record evidence that Claimant's enrollment ever fell below full-time, let alone during the weeks ending March 17, 24 and 31, 2018. Since Claimant clearly still had the option of enrolling in additional classes during the week ending March 17, 2018, and he did so, the Department prematurely changed Claimant's status. The April 11, 2018 emails support a conclusion that the Department "changed [Claimant's status] back to full[-]time" because Claimant was already enrolled full-time. N.T. Claimant Ex. 3 at 1.

Notwithstanding that the UCBR is "the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence[,]" the record evidence does not support the UCBR's findings and conclusions in this case. *Sipps*, 181 A.3d at 484 (quoting *Ductmate Indus.,* 949 A.2d at 342); *see Goldman v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 2392 C.D. 2014, filed September 25, 2015); *see also VanKersen v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 1771 C.D. 2014, filed April 21, 2015).[8] As substantial record evidence does not support the UCBR's findings that Claimant was enrolled at DCCC only part-time during the claim weeks ending March 17, March 24 and March 31, 2018, the UCBR erred by concluding that Claimant was ineligible for TRA benefits during those weeks and that he was overpaid TRA benefits during the week ending March 17, 2018.

---

[8] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Goldman* and *VanKersen* are cited herein for their persuasive value.

For all of the above reasons, the UCBR's orders are reversed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard A. Spradlin,             :
          Petitioner     :
                               :
        v.                  :
                               :
Unemployment Compensation :
Board of Review,          :
          Respondent   :   No. 159 C.D. 2019
                               :
Richard A. Spradlin,             :
          Petitioner     :
                               :
        v.                  :
                               :
Unemployment Compensation :
Board of Review,          :   No. 160 C.D. 2019
          Respondent   :

## O R D E R

AND NOW, this 16th day of August, 2019, the Unemployment Compensation Board of Review's December 19, 2018 orders are reversed. The Department of Labor and Industry's Motions to Strike Extra-Record Evidence are granted.

 

_____
ANNE E. COVEY, Judge