# STATE OF MICHIGAN

# COURT OF APPEALS

CREATIVE ARTS CENTER ROCKFORD and
ARTS ROCKFORD,

UNPUBLISHED
April 19, 2018

Plaintiffs-Appellants,

v

No. 336910
Kent Circuit Court
LC No. 15-001688-CB

CITY OF ROCKFORD,

Defendant-Appellee,

and

INDEPENDENT BANK CORPORATION and
ATTORNEY GENERAL,

Defendants.

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Plaintiffs, Creative Arts Center Rockford (CACR) and Arts Rockford, appeal as of right the trial court's declaratory judgment. We affirm.

Defendant, City of Rockford (Rockford), enacted an ordinance that created an Area Arts Commission (AAC). The relevant provision, as codified under Rockford's Code of Ordinances § 1.5(C), states, in relevant part:

(C) AREA ARTS COMMISSION

(1) Commission Continued. The Area Arts Commission heretofore created by the City is hereby continued and shall have the following powers and duties:

(a) To act in an advisory capacity to the City government in connection with the artistic and cultural development of the City.

(b) To coordinate creativity through its assistance, scheduling and communication.

-1-

(c)  To sponsor and encourage cultural and educational activities in the City and its surrounding areas.

(d)  To act for all the people as the means towards the end result of making the Rockford area more habitable and improving the quality of life by sponsoring cooperative planning, research, fund raising, public education programs, and fostering a creative atmosphere.

(e)  To undertake such other services and programs deemed necessary to encourage participation and appreciation of the arts by all citizens in the Rockford area.

* * *

(4)  Organization.  The Area Arts Commission may organize and elect a chairperson annually and adopt such administrative procedures as are necessary to accomplish the purposes enumerated herein.  City officers and the staff of City departments may consult and advise with the Commission from time to time on matters coming within the scope of this Chapter; and, the Area Arts Commission may likewise consult and advise with such officers and staff.

* * *

(7)  Funds.  All monies collected by the Commission shall be held by the City Treasurer in a separate City account.  Said monies shall be expended and drawn from the separate City account as authorized by voucher from time to time by the Area Arts Commission.

For many years, the AAC carried out its mission by accepting monies from local arts and cultural groups, holding the monies in a separate arts-fund account, and disbursing the funds to cover expenses incurred by local arts and cultural groups who requested funds from the AAC. Around 1994, a group of local women formed CACR, a Michigan nonprofit corporation that obtained federal 501(c)(3) tax exempt status, to raise funds to support local arts and culture endeavors.  Later, some AAC commissioners took over CACR when its founders ceased to have further interest in carrying on CACR's mission.  AAC never formed its own nonprofit organization to fundraise for the local arts and culture.

For nearly 20 years, the AAC and CACR enjoyed a friendly relationship.  As a tax exempt nonprofit corporation, CACR qualified for and obtained state funded grants.  As an extension of the city government, the AAC lacked the qualifications to apply for and receive such grants. CACR and other local arts groups transferred monies to the AAC, which disbursed the funds in compliance with Rockford's Code of Ordinances § 1.5(C).  CACR historically helped numerous local arts and cultural groups, which included the orchestra, choir, music performance groups, theater, ballet, writers, and visual artists.

Around 2014, CACR hired an executive director to help it grow and establish an arts center.  Discord developed between CACR and the AAC due to animus between CACR's executive director and Rockford's City Manager.  Ultimately, this hostility led to plaintiffs filing

suit for declaratory relief regarding $58,226.58 held by the AAC in a segregated Rockford account and $3,955.01 that CACR raised from holding a state licensed raffle and deposited into its own bank account. Plaintiffs sued and demanded an accounting, a declaration of their rights to the disputed funds, and damages for common-law and statutory conversion.

The trial court held a bench trial over the course of several days. The trial court entered a declaratory judgment in favor of Rockford respecting the $58,226.58, in favor of plaintiffs respecting the $3,955.01, and entered a judgment of no cause of action in favor of Rockford on plaintiffs' conversion claims. Plaintiffs now appeal.

Plaintiffs first argue that the trial court erred by declaring that Rockford had legal entitlement to the $58,226.58 it held on the ground that Rockford failed to establish that it had authority to hold monies entrusted to it by arts groups including CACR. We disagree.

We review "de novo a decision to grant or deny a declaratory judgment; however, the trial court's factual findings will not be overturned unless they are clearly erroneous." *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012). Findings of fact are clearly erroneous where no evidentiary support exists or if this Court is left with a definite and firm conviction that a mistake has been made. *Trahey v Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015).

MCR 2.605 governs declaratory judgments, and the court rule provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1).

"Under Const 1963, art 7, § 22, a Michigan municipality's power to adopt resolutions and ordinances relating to municipal concerns is 'subject to the constitution and law'." *People v Llewellyn*, 401 Mich 314, 321; 257 NW2d 902 (1977). "Michigan is strongly committed to the concept of home rule, and constitutional and statutory provisions which grant power to municipalities are to be liberally construed." *Bivens v Grand Rapids*, 443 Mich 391, 400; 505 NW2d 239 (1993). Local governments may exercise reasonable control to regulate matters of local concern in a manner and to the degree that the regulation does not conflict with state law. *City of Taylor v Detroit Edison Co*, 475 Mich 109, 117-118; 715 NW2d 28 (2006). Further, under The Home Rule City Act, MCL 117.1a *et seq*., and specifically, MCL 117.5b, cities have authority to enact municipal ordinances. In this case, Rockford exercised its constitutional and statutory power to enact Rockford's Code of Ordinances § 1.5(C).

We interpret ordinances in the same manner that we interpret statutes. *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 498; 597 NW2d 858 (1999). If the language is clear and unambiguous, courts may only apply the language as written. *Id*. A provision is ambiguous only if it irreconcilably conflicts with another provision or it is equally susceptible to more than a single meaning. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 136; 892 NW2d 33 (2016). We follow these rules of construction to give effect to the legislative body's intent. *Ballman v Borges*, 226 Mich App 166, 167; 572 NW2d 47 (1997).

We hold that Rockford Code of Ordinances § 1.5(C) is clear and unambiguous. Rockford Code of Ordinances § 1.5(C)(7), authorized the AAC to collect monies. The City Treasurer had the obligation to hold such monies in a separate city account. The ordinance permitted spending the monies and drawing on the account as authorized by the AAC. The ordinance did not require the AAC to treat the funds as belonging to any person or entity who transferred the funds to Rockford. The ordinance plainly gave the AAC broad discretion to decide how the monies would be used. Further, the ordinance did not impose fiduciary obligations on the AAC respecting the funds collected and held in the AAC's arts fund account.

The ordinance created no duties that the AAC owed to CACR or any other person or entity in the Rockford area respecting funds collected and held by the AAC. The AAC had no obligation to hold the funds collected by the AAC for any party's benefit. Rather, Rockford Code of Ordinances § 1.5(C)(1)(d) empowered the AAC to work for the general welfare of the people of Rockford to make the Rockford area a more habitable place through its sponsorship and coordination of local artistic and cultural activities. The ordinance unambiguously granted the AAC broad powers to fulfill its ordained purposes.

Significantly, the record reflects that the AAC had no binding legal obligation to hold any monies collected by the AAC for the exclusive benefit of CACR. The parties never entered a contract or defined their relationship. Further, nothing in the record establishes that CACR ever retained ownership or control over the monies it raised and transferred to the AAC. The record reflects that historically various arts-related entities transferred monies to the AAC and that the AAC disbursed the monies later upon requests by arts-related entities. Rockford's April 14, 2014 general ledger report stated that some of the $58,226.58 in the AAC arts-fund account came from state grants and that a portion came from local arts groups' fundraising activities. The ledger reflects that the funds were not segregated into distinct and separate funds for any individual arts-related entities. Although the account segregated the funds, those funds were unclassified.

Further, no evidence established that the AAC lacked discretion or had any legal obligation to disburse funds it held in any manner other than as prescribed by Rockford's Code of Ordinances § 1.5(C). The evidence established that, although CACR existed as a separate nonprofit corporate entity distinct from the AAC, CACR historically chose to transfer funds to the AAC. We do not believe that CACR had a legal obligation to transfer funds to the AAC. Nevertheless, it did so, and once those funds were transferred to Rockford, they became subject to Rockford's Code of Ordinances § 1.5(C), which gave the AAC discretion to disburse those funds for the general benefit of the Rockford area.

Accordingly, we hold that the trial court did not err by concluding that the monies CACR gave to the AAC belonged to Rockford because the AAC collected the monies pursuant to Rockford Code of Ordinances § 1.5(C)(7) and held the monies in a separate city account for disbursement as authorized by the AAC in accordance with the city ordinance. Therefore, the trial court correctly granted Rockford declaratory relief respecting the $58,226.58.

Plaintiffs argue for the first time on appeal that Rockford had an implied contract with CACR entitling CACR to the $58,226.58. Michigan generally follows a raise or waive rule of appellate review. *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008). However,

this Court has the discretion to overlook preservation requirements. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (stating that this Court may overlook preservation requirements where the failure to consider the issue would result in a manifest injustice, or if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented). That said, this Court will exercise its discretion sparingly and only where exceptional circumstances warrant review. *Booth v Univ of Mich Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993). Because plaintiffs failed to raise any implied contract claim below, we hold that plaintiffs waived this issue, and we decline to review it.

Plaintiffs next argue that the trial court erred by denying it declaratory relief because CACR transferred monies to the AAC and Rockford held the monies in a segregated account. Plaintiffs contend that because Rockford held the monies in a separate account that its independent auditors labeled "fiduciary funds," a fiduciary relationship arose between CACR and Rockford requiring Rockford to hold the monies for CACR's sole benefit. Plaintiffs claim that the trial court should have imposed a resulting trust or constructive trust over the $58,226.58 and erred by not declaring those monies belonged to CACR despite the legal provisions of Rockford's Code of Ordinances § 1.5(C). We disagree.

In *In re Karmey Estate*, 468 Mich 68, 74; 658 NW2d 796 (2003), the Michigan Supreme Court explained, " 'Fiduciary relationship' is a legal term of art, as is the phrase 'confidential or fiduciary relationship.' " The Michigan Supreme Court relied on Black's Law Dictionary (7th ed), which defines a "fiduciary relationship" as

> [a] relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships— such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client— require the highest duty of care. Fiduciary relationships [usually] arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer. [*Id*. at 74 n 2.]

Regarding the term "confidential or fiduciary relationship," the Michigan Supreme Court explained:

> Although a broad term, "confidential or fiduciary relationship" has a focused view toward relationships of inequality. This Court recognized in *In re Wood's Estate*, 374 Mich 278, 287; 132 NW2d 35 (1965), that the concept had its English origins in situations in which dominion may be exercised by one person over another. Quoting 3 Pomeroy, *Equity Jurisprudence* (5th ed, 1941), § 956a, this Court said a fiduciary relationship exists as fact when " 'there is confidence reposed on one side, and the resulting superiority and influence on the other.' " 374 Mich [at] 283.

Common examples this Court has recognized include where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser. 374 Mich [at] 285-286. In these situations, complete trust has been placed by one party in the hands of another who has the relevant knowledge, resources, power, or moral authority to control the subject matter at issue. [*Id*. at 74 n 3.]

In *Potter v Lindsay*, 337 Mich 404, 410; 60 NW2d 133 (1953), the Michigan Supreme Court described a "resulting trust" as follows:

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted and the beneficial interest is not otherwise effectively disposed of. Since the person who holds the property is not entitled to the beneficial interest, and since the beneficial interest is not otherwise disposed of, it springs back or results to the person who made the disposition or to his estate, and the person holding the property holds it upon a resulting trust for him or his estate. [Quotation marks and citation omitted.]

The Michigan Supreme Court has also explained that a "constructive trust" is not an independent cause of action but an equitable remedy. *Kammer Asphalt Paving Co v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993). In *Ooley v Collins*, 344 Mich 148, 158; 73 NW2d 464 (1955), the Michigan Supreme Court explained that a constructive trust may be imposed to do equity or to prevent unjust enrichment but not if the party seeking the equitable remedy contributed to the reasons for imposing the constructive trust.

In this case, no evidence established that the AAC had a fiduciary relationship with CACR. The AAC had no legal duty to act for the benefit of CACR. The AAC's existence and the scope of its duties were expressly and unambiguously defined by the Rockford Code of Ordinances § 1.5(C). The AAC had authorization to collect and spend monies pursuant to § 1.5(C)(7). Nothing in the Rockford Code of Ordinances § 1.5(C) created a fiduciary relationship or required the creation and maintenance of a "fiduciary account" for any person or entity respecting monies collected and held by the AAC. Instead, the AAC had authority to collect monies, hold them in an account set up by the City Treasurer, and exercise discretion to spend the money for the general welfare of the people of Rockford to support the arts and culture.

The record does not reflect that the AAC failed to comply with its duties under Rockford Code of Ordinances § 1.5(C). We do not believe that CACR's transfer of monies to the AAC established a fiduciary relationship between the AAC and CACR, nor does it dictate the conclusion that a resulting trust existed requiring the imposition of a constructive trust over the $58,226.58 for CACR's benefit. Once monies were transferred to the AAC, the AAC had to comply with Rockford Code of Ordinances § 1.5(C). As the trial court correctly discerned, to conclude otherwise would undermine the city's ordinance and the AAC's lawful authority to act as required under that ordinance. As a separate and distinct nonprofit corporate entity, CACR

could have chosen not to transfer monies to the AAC. However, once it did so, the money belonged to Rockford for use by the AAC pursuant to Rockford Code of Ordinances § 1.5(C).

We hold that the trial court did not err by declaring that the $58,226.58 belonged to Rockford because the monies were held by Rockford in a segregated account for the AAC in compliance with Rockford Code of Ordinances § 1.5(C)(7) for use as defined under the city's ordinance. Therefore, the trial court correctly denied plaintiffs declaratory relief regarding the $58,226.58.

Lastly, plaintiffs argue that the trial court erred by not awarding CACR damages for common-law and statutory conversion. We disagree.

We review for clear error a trial court's findings of fact following a bench trial and review de novo its conclusions of law. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). Factual findings are clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that the trial court made a mistake. *Castro v Goulet*, 312 Mich App 1, 3; 877 NW2d 161 (2015); *Dep't of Licensing and Regulatory Affairs v Khan*, 311 Mich App 66, 70; 874 NW2d 188 (2015).

Under the common law, conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Dist Serv, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015). MCL 600.2919a defines statutory conversion as follows:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

In *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 595 (1999), this Court explained:

> The tort of conversion is any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein. Statutory conversion, by contrast, consists of knowingly buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property. To support an action for conversion of money, the defendant must have an obligation

to return the specific money entrusted to his care. The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship. [Quotation marks and citations omitted.]

In this case, as explained above, the trial court properly held that Rockford owned and possessed the $58,226.58 pursuant to Rockford Code of Ordinances § 1.5(C). Therefore, Rockford did not commit common-law or statutory conversion respecting the $58,226.58. The trial court properly analyzed the evidence and correctly concluded as a matter of law that Rockford never converted, nor could it convert, monies in its possession and control pursuant to Rockford Code of Ordinances § 1.5(C).

Rockford also never possessed or controlled the $3,955.01. Although Rockford disputed CACR's right to the money in CACR's bank account, the record establishes that Rockford did not take possession of that money and never exercised dominion or control over it. The bank froze CACR's account because of the parties' dispute over the deposited funds but did not turn the monies over to Rockford. Later, pursuant to the parties' stipulation, the trial court ordered that the money be held in an escrow account by plaintiffs' counsel. Therefore, the evidence did not establish that Rockford took dominion and control over the money in the bank account.

We conclude that plaintiffs failed to prove that Rockford converted CACR's monies because the evidence established that the $58,226.58 belonged to Rockford, and as a matter of law, Rockford could not convert its own monies held by it pursuant to Rockford Code of Ordinances § 1.5(C). Further, the evidence established that Rockford never had possession or control of the $3,955.01. Accordingly, Rockford did not commit either common-law or statutory conversion. Therefore, the trial court did not err by granting judgment to Rockford on plaintiffs' conversion claims.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron

-8-